## C. B. RIX V. THE STATE.

### *No. 461. Decided May 9.*

**1. Theft—Conspiracy—Collateral Evidence in Proof of.**—On a trial for theft of cattle, in which the evidence tended to show a conspiracy to commit the crime between accused and two other parties, and where the State, over objection, was permitted to prove by the sheriff that he had a conversation in jail with defendant, who was imprisoned on another charge, and that immediately thereafter he (the sheriff) telegraphed to a deputy to arrest one of the coconspirators, and that said deputy arrested both. *Held*, that the testimony should have been excluded, except so much as defendant himself drew out from the witness—that is, the fact that on the day of said conversation witness telegraphed his deputy to arrest and hold one of the coconspirators (naming him) till he got there.

**2. Same—Evidence—Declarations of Coconspirators.**—Where a conspiracy has been established, the declarations of each of the conspirators, made while the parties were carrying it out, is evidence against the others.

**3. Conspiracy Made while in Jail.**—While a party is in jail no statement of his, written or verbal, is admissible in evidence against him, unless he has been warned that such statements could be used against him.

**4. Principal—Accomplice—Indictment.**—A party indicted as a principal can not be convicted on evidence showing him to be an accomplice and not a principal. To convict one as an accomplice he must be indicted as such.

APPEAL from the District Court of Live Oak. Tried below before Hon. M. F. LOWE.

Appellant was indicted for theft of eleven head of cattle, the property of Peter Mikaska. At his trial he was convicted, with punishment assessed at two years' confinement in the penitentiary.

The opinion discloses most of the important facts in the case.

Dave Odom testified for the State, as follows: "I know defendant. C. B. Rix. Sometime during the first of March, 1893, I went to Beeville to carry a prisoner and put him in the county jail. While there I saw C. B. Rix and talked with him. This was before noon. I also

met and talked with other men.   That afternoon I sent a telegram to Jimmie Dolan, at Mathis, to hold Charley Gallagher until I got there. That night, after I got there, I arrested Charley Gallagher and took him to Gussettville, in Live Oak County, and then arrested J. J. Gallagher, I sometime afterwards received a letter, in due course of mail, signed 'C. B. Rix,' and dated at Beeville, April 1, 1893.   The signature is that of the defendant."

This witness said when he talked to Rix, as above, Rix was in the Bee County jail.

The State here introduced said letter, as follows, to-wit:

"OFFICE OF D. A. T. WALTON,
    "SHERIFF BEE COUNTY, TEXAS.

"*Mr. Dave Odom, Sheriff:*                    "BEEVILLE, April 1, 1893.

"FRIEND DAVE—I will drop you a few lines to let you know what I have heard about what you and Goodwin are going to do with me about those cattle.   Dave, I always taken you to be a friend to me, but from what I have heard I guess I badly off on my base.   I know that Goodwin is no friend of mine, altho I never don him any harm in my life.   I have lurned that you and Goodwin say that I am the guilty man, and that you are going to put me in for it all, and are going to let Jimmie Gallagher out.   Dave, I can prove that I never had anything to do with it.   I have hurd that you said that I gave the thing away to get the reward.   I never known anything about any reward until you told me so, and that you would work it up and whack up, and I always thought that you was a man of your word, and think so yet.   I have hurd that you told Jimmie Gallagher that if he would turn State's evidence against me and Charley that you would get him out and put me in for it all, and that you would get Charley out and put me in for it all.   I understand that you say that I am the man that you and Goodwin have been after and the man you want, and if you can get me in the pen is all you want, and that you had been working after me a long time and now you thought that you had me where you wanted me, and that you was going to do all you could to get me in the pen, and that you said that you had me fasent now and that you was going to put the screws to me.   Maby you will, but you will put the screws to a innocent man.   Dave, I always thought that you was a friend of mine, but it looks like you are trying to do all you can against me.   You telegraphed up here that had given G. C. Little away.   If Little ever sold any cattle, I don't know it.   I never saw him take a cow in my life.   Dave, after I put you on the stealing you want to take the upper hand of me.   I didn't think that you was that kind.   I always thought when you said anything you ment it, and I think after I have put you on the stealing you ought stay with me.   If

I hadent athought you was a friend you never would of nown any-
thing about. I have been told you was going to give me all the durt
that you can, but I think you will stay with me, as you said you would
at first, but as I am entitled to the reward I would like to have it, as I
have got a wife and two little children that needs it. It aint me that
suffers; it my children. Hoping to hear from you soon. Yours as
ever,                                            "C. B. RICKS."

The following is the letter of the defendant to the district attorney,
which was also read in evidence:

"*Mr. Walton, Oakville, Texas:*     "KENNEDY, September 17, 1893.

"DEAR SIR—I will drop you a few lines to let you know that I am
not running from nothing that I have done. I am more than willing
to go before the grand jury and make a witness against those boys,
but I thought that if I went there that I would have more trouble, and
that is something that I don't want; but if you want me before the
grand jury, I am willing to come and go before it. Respectfully,
                                                 "C. B. RICKS."

*J. M. Eckford*, for appellant.—The court erred in permitting Dave
Odom, sheriff of Patricio County, Texas, and a witness for the State,
to testify, over the objection of defendant, that defendant told him,
while a prisoner in the Bee County jail, that defendant had received a
letter from the Gallagher boys, and that he (Odom) then telegraphed
to Jim Dolan, his deputy at Mathis, to hold Charley Gallagher until
he could get there from Beeville; that witness went to Mathis and ar-
rested Charley Gallagher, and from Mathis, in San Patricio County, he
went to Gussettville, in Live Oak County, Texas, and arrested J. J.
Gallagher. Because, as shown by the testimony of the defendant's wit-
nesses, Will Jones, Will McCampbell, Lon C. Hill, and others, as well
as the testimony of Dave Odom himself, said defendant was in the Bee
County jail, having been surrendered by his bondsmen in the case
against him for the killing of Thomas Lassater, and was also serving
out a thirty days' sentence in said jail. Code Crim. Proc., art. 750;
Nolen v. The State, 14 Texas Crim. App., 474; Cain v. The State, 18
Texas, 387; Weller v. The State, 16 Texas Crim. App., 200; Johnson
v. The State, 20 Texas Crim. App., 178; Williams v. The State, 10
Texas Crim. App., 526; Lopez v. The State, 12 Texas Crim. App., 27.
The court erred in permitting the State to prove up and introduce
in evidence, over the objection of defendant, a certain letter dated at
Beeville, Texas, on April 1, 1893, and purporting to be signed by C.
B. Rix, and addressed to Dave Odom, because it was positively proven
by defendant's witnesses, Jones, Hill, McCampbell, McKinney, and

others, that defendant, on April 1, 1893, was held in the Bee County jail on a criminal charge, and because, when offered, its competency as evidence had not been. shown by the State when offered by the State, proving that defendant was not under arrest or legal restraint, or that said letter was written voluntarily and without compulsion or persuasion, or that defendant (if under legal restraint) had been cautioned, etc., and because the contents of said letter were prejudicial to defendant.    Code Crim. Proc., art. 750; Adams v. The State, 34 Texas, 526; Barnes v. The State, 36 Texas, 356; Williams v. The State, 37 Texas, 474; O'Connell v. The State, 10 Texas Crim. App., 567.

The court erred in its general charge to the jury in charging the jury as to the law of principals in criminal cases, because all the evidence in this case shows, if the defendant had any guilty connection with the transaction at all, that it was only as an accomplice, when defendant was convicted as a principal because of said charge of said court.

The court in its general charge erred in not defining who was an accomplice in this State, and did not instruct the jury that in this case defendant was but an accomplice and could not be convicted under the indictment in this case.

The jury found defendant guilty of being a principal offender in the charge of theft alleged in this case, when the testimony shows that, if guilty at all, defendant was only guilty as an accomplice, and not as a principal.

The jury found contrary to the special instruction asked by defendant, because said special instruction was the law of this case, and because all the facts show that if defendant was guilty—a guilty agent in the theft of Mikaski's cattle—he was guilty as an accomplice, and not as a principal.

An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands, or encourages another to commit the offense; or who agrees with the principal offender to aid him in committing the offense, although he may not have given such aid.

An accomplice must be indicted as such.    If charged as a principal, and the proof shows him to have been an accomplice, the charge is not sustained, and defendant must be acquitted.    Sims v. The State, 10 Texas Crim. App., 131; Truitt v. The State, 8 Texas Crim. App., 148.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of theft of cattle, and his punishment assessed at two years in the penitentiary.

The evidence shows, that appellant attended a party at Gussettville, in Live Oak County, on February 6, 1893, and there met J. J. Galla-

gher and Charles Gallagher, and made an agreement with them that they should steal a carload of cattle out of Boyd's pasture and drive them to Beeville, and appellant would at once ship them by the Southern Pacific. Next day Charles Gallagher went with Rix to Beeville to see about cars. Some eighteen days afterwards the brothers, having perfected arrangements, wrote to Rix that they would meet him with the cattle, and on the 26th drove some thirty head, including the cattle alleged to be stolen, to Burk's windmill; but not meeting Rix, they drove on towards Beeville, and, reaching Koehler & Hildenfeld's pasture, seven miles from Beeville, they placed the cattle in the pasture, and J. J. Gallagher rode on to Beeville and found that Rix was not in town. The Gallaghers then abandoned the cattle and rode back home. The evidence shows that Rix, who lived in Beeville, left there on the 16th of February, and did not return till the 2nd day of March, when he came with his family. The evidence as to the contract between Rix and the Gallaghers is entirely derived from the testimony of J. J. Gallagher, who testified as to the whole matter. The corroboration lies in the proof that Rix and the Gallaghers were seen in earnest conversation at the party. That next day Rix and one of the Gallaghers rode around in Boyd's pasture and looked at the cattle, and Rix offered to purchase some of the cattle from the owner, offering a lower price than he would accept; that Rix and Charles Gallagher were next seen riding to Beeville together; that on the night the cattle were driven, witness Terrell met the two Gallaghers in charge of the cattle, who told him they belonged to Rix, and tried to hire him to assist in driving them to the windmill, where they said Rix would meet them. It was further shown, that on the 4th of March, or two days after his return home, appellant came up to one Wash Barker with a letter he said had been written by the Gallaghers about the stolen cattle, remarking, "it *was rather late* to have received such a letter." Witness declined to read it, but advised him to destroy it. It was known then that the cattle were stolen.

1. Appellant complains that the court erred in permitting Dave Odom, sheriff of San Patricio County, to testify, over the objection of defendant, that on the 15th of March, 1893, he had a conversation with defendant, then in jail under a charge other than that for which he was being tried, and immediately thereafter telegraphed to his deputy to arrest Charley Gallagher, and he at once went and arrested both the Gallaghers on a charge of theft of the cattle described in the indictment. This testimony should have been excluded, except so much as appellant himself drew out of the witness, to wit, the fact that upon the same day of the conversation the sheriff telegraphed to his deputy to hold Charles Gallagher till he reached there. The court excluded all conversation between appellant and Odom.

2. The court did not err in overruling the objection to the evidence of Bynum Terrell as to the declarations of the Gallaghers while driving the stolen cattle, for it is shown that a conspiracy had been formed and the parties were carrying it out.

3. Appellant further complains that the court erred in admitting in evidence a letter written by appellant to Dave Odom, the sheriff, after the interview in the jail, to the admission of which appellant duly excepted. There is no question appellant was in jail when the letter was written. Not having been warned, no statement, written or verbal, of appellant while in jail, can, under the law, be admitted in evidence against him. An examination of the letter shows that it is an assertion of his innocence, but it also contains the admission that appellant had put Sheriff Odom on the trail of the guilty parties, and had he not done so they could not have been found out. The evident purpose of introducing the letter was to show appellant's knowledge of and connection with the crime. To the same end was introduced the fact that Odom conversed with appellant, then in jail, before he arrested the Gallaghers. Also, the letter of date September, 1893, introduced by the State, written by appellant to the district attorney, offering to testify against the Gallaghers whenever he was wanted. The court erred in admitting the letter to Sheriff Odom. It was a strongly inculpatory fact that he only was able to put the sheriff on the track of the guilty parties, for it tended to corroborate the statement of the witness Gallagher; but the evidence to prove such a fact must be legal and admissible. The court should not have permitted proof of what the sheriff did after conversing with appellant, nor should he have permitted the letter to be introduced.

4. But a serious question is presented in appellant's sixth and seventh assignments of error.

The evidence shows that appellant, if guilty, is an accomplice, and not a principal in the crime. An accomplice is one who is not present at the commission of an offense, but who, before the act is done, advises, commands, or encourages another to commit the offense, or who agrees with the principal offender to aid him in committing the offense, though he may not have given such aid. Penal Code, art. 79; Bean's case, 17 Texas Crim. App., 61; Phillips' case, Id., 169; Smith's case, 21 Texas Crim. App., 107; Watson's case, Id., 598.

The evidence shows, that after making the agreement to meet the Gallaghers with the stolen cattle at Burk's windmill and drive them to Beeville, and ship them on the Southern Pacific on cars previously ordered, he did not in fact do so; nor is it shown that any arrangements were made for cars, but on the contrary, ten days after the time of the alleged agreement, he left the town of Beeville with his family and remained in a different county until the 2nd of March, when he returned to Beeville with his family. It was during his absence the Gal-

laghers drove the cattle. This evidence, in the absence of any notification to the Gallaghers of his intended absence, strongly tends to prove at least a temporary abandonment of the conspiracy, and if so, appellant would be an·accomplice and not a principal.

And while the accomplice is guilty of the same offense as the principal (Carlisle's case, 31 Texas Criminal Reports, 547), yet it is well settled in this State that to convict one as an accomplice he must be indicted as such. McKeen's case, 7 Texas Crim. App., 630; Sims' case, 10 Texas Crim. App., 131; Truitt's case, 8 Texas Crim. App., 148; Mills' case, 13 Texas Crim. App., 487; Bean's case, 17 Texas Crim. App., 60; Smith's case, 21 Texas Crim App., 107; Bouldin's case, 18 Texas Crim. App., 637; Phillips' case, 26 Texas Crim. App., 228.

For errors indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.