### J. W. WEBB v. THE STATE.

*No. 921.　Decided April 22nd, 1896.*

1.　**Aggravated Assault and Battery Upon a Female—Information—Sufficiency of.**

An information for aggravated assault and battery, which charged that the same was committed by defendant, "an adult male in and upon one W., a female," sufficiently charges an aggravated assault, and a further charge, as to how said assault was committed, may be rejected as surplusage.

2.　**Same—Principals.**

Nor, in such information as that above mentioned, was it necessary to allege the name of another party who may have acted with defendant as a principal.

3.　**Same—Evidence.**

While, on the trial of a defendant for an aggravated assault upon his wife, it was admissible to prove that he caused a party to get in bed with his wife and attempt to have carnal intercourse with her, for the purpose of having a ground for a divorce.

It was inadmissible to permit testimony, over objection of defendant, to the effect that he had been previously married and divorced as many as four times; and, such evidence was not only inadmissible, but doubtless prejudicial to the defendant.

APPEAL from the County Court of Fannin. Tried below before Hon. JAMES Q. CHENOWETH, County Judge.

This appeal is from a conviction for aggravated assault by an adult. male upon a female, the punishment being assessed at a fine of $500 and one years' confinement in the county jail.

The prosecutrix, upon whom the assault was committed, was the wife of the appellant, and her testimony is reproduced to show all the essential facts in the case.

Mrs. A. L. Webb, testified: "I am a female, defendant is an adult male, we were married about two months ago by Rev. Mr. Lair, north of Bonham about eight or nine miles. About two weeks or three weeks. after we were married defendant was arrested and put in the Bonham jail for the offense of bigamy. Shortly after he got out on bond he came back to my home and told me he had a divorce, and could prove himself innocent, and begged me to live with him again, making all kinds of good promises. I agreed to live with him again. A few days after he returned, he went off and was gone four or five days. When he came back, he brought Charley McWaters with him. That night myself and. defendant slept in one room, adjoining that in which Charley McWaters. slept. Some time in the night, about midnight I guess, I was aroused by some one taking hold of my legs under my gown. I discovered who it was, and kicked and pushed and told him to get out of there and leave there, he immediately jumped out and went back to his bed. The defendant soon came in, and I at once told him what McWaters had done, and begged him to drive him off the place. Defendant would only reply, he did not mean any harm, and not to bother him. I told defendant then, I believed he put McWaters up to do what he did. I never consented for McWaters to take hold of me, and what he did was without my consent. I had met Charley McWaters a few times. Defendant bought a crop in my neighborhood last fall, and Charley McWaters worked for him in gathering the crop. McWaters was never in my house but once or twice before I was married to defendant, and defendant was with him then. For the last six or seven years, I and my mother and two children have been living together, and have been living together about three years in Fannin County, about ten or eleven miles north from Bonham. I was raised in Bowie County, Texas, and there married a man by the name of Hill. We separated about ten or eleven years ago. I have never gotten a divorce for the reason, that several years ago I was reliably informed that my husband was dead, and have never heard it disputed by any one. The defendant was in possession of these facts before we were married. We talked it all over. Defendant did not tell me he had a living wife and family in Wolfe City. He told me his wife was dead. I knew his son. I met him after, or about the time we were married. After I married defendant, my mother moved back to Bowie County.

At the time the assault was made on me, I did not know defendant was going to bring suit for a divorce, nor did I know he had sued me for divorce, when I made the complaint against the defendant and Charley McWaters. Shortly after the assault on me, I returned to South Bonham, and, the first woman I had a good opportunity to tell it to was Mrs. Joe Moore, who is a near neighbor to me in South Bonham. This was about two weeks after the assault on me. Mrs. Moore advised me to go to the officers about it, which I did. Before I made the complaint, defendant had gone over to Wolfe City, and had been gone three or four days, or perhaps a week. Defendant had citation for divorce served on me before he was arrested, and after I had made complaint against him. Defendant came to me, at Mr. Joe Moore's in South Bonham, last Friday and told me if I testified against him, it would ruin him, and told me if I would leave the county, he would give me his wagon and team. That I could go in the wagon to Paris, Texas, and sell the team and wagon, get the money for them and leave the country. I told him I would not. The assault was made on me in Fannin County, Texas, December the 14th, 1895."

This testimony of Mrs. Webb was fully corroborated by the testimony of Charlie McWaters, in so far as his connection with the affair was concerned. Defendant saved a bill of exceptions to the State being permitted, over his objections, to prove that he had been several times married and several times divorced.

[No brief for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of an aggravated assault, and his punishment assessed at a fine of $500, and one year's imprisonment in the county jail; and from the judgment of the lower court he prosecutes this appeal. Appellant made a motion in arrest of judgment, on the ground that the information in this case does not charge an offense. The charge in the information, that "J. W. Webb, an adult male, did then and there commit an aggravated assault and battery in and upon A. L. Webb, a female," sufficiently charges an aggravated assault, and the further charge in the information as to how said assault was committed, may be rejected as surplusage. However, there is nothing, as it occurs to us, erroneous in having stated the means by which the alleged assault was committed, and there appears no variance in the proof; and it was not necessary to allege the name of the other party who may have acted with the defendant in this case as a principal. See, Mayo v. State, 7 Tex. Crim. App., 342; Cudd v. State, 28 Tex. Crim. App., 124, and authorities there cited. Appellant also assigns as error, that the court permitted the State to prove, over his objection, that he had previously been married and divorced as many as four times. Appellant objected to this testimony, and, on its admission, reserved his bill of objections thereto. It appears from the record in

this case, that it was a part of the State's case to prove that the appellant caused one McWaters, to get in bed with his wife, and attempt to have carnal intercourse with her, for the purpose of having a ground for divorce. All testimony bearing upon this issue was legitimate, but we fail to see how evidence that the defendant had been previously married to other women, and had been divorced from them, could have any bearing upon the issue in this case. If evidence in regard to the other divorces was admissible at all, it would have been competent to have gone into the details, to have ascertained the right or wrong of the defendant in such cases. This would involve, to a great extent, a trial of such other cases, and such other cases had no more bearing upon this case than proof that the defendant had previously been involved in a number of assault and battery cases. It cannot be said, in the light of the verdict in this case, that such testimony was immaterial. The jury assessed a fine of $500, and a year's imprisonment, against the defendant; and we cannot say but that the facts proved, that the defendant had married a number of other women, and secured divorces from them, may not have prejudiced the defendant in the eyes of the jury, and caused them to inflict greater punishment than they would otherwise have done. For the error of the court in admitting this testimony, the judgment is reversed and the cause remanded.

*Reversed and Remanded.*