Louis Zweig v. The State.

No. 2080. Decided April 30, 1913.

Rehearing March 11, 1914.

**1.—Receiving Stolen Property—Indictment—Date of Original Taking.**

In an indictment for receiving stolen property and bringing the same into this State, it is not necessary to allege the date that the person committing the theft committed the same, or to allege the time and place of the original taking, the indictment being sufficient in other respects. Following Perkins v. State, 45 Texas, 10, and other cases.

**2.—Same—Proof of County in Other State—Surplusage.**

Where, upon trial of receiving stolen property in another State and bringing the same into this State, the indictment alleged that the defendant received the stolen property in the State of Missouri, County of St. Louis, it was not necessary that the proof show that he received the property in that county, as

that allegation was not an element of the offense or in any way descriptive of the same, and the same may be regarded as surplusage; besides, the evidence showed that the goods were stolen in the city of St. Louis, which was usually considered and understood to be a part of St. Louis County. Following Mayo v. State, 7 Texas Crim. App., 342, and other cases. Davidson, Presiding Judge, dissenting.

### 3.—Same—Severance—Bill of Exceptions.

Where the application for severance and the bill of exceptions reserved thereto did not make it manifest that defendant had ever been arrested, that he was willing to be first tried or whether he had been indicted as an accomplice, principal or accessory, or that the granting of the application for severance could not have resulted in a continuance, there was no error in overruling said application. Following Williams v. State, 27 Texas Crim. App., 466, and other cases.

### 4.—Same—Rule Stated—Presumption.

On appeal, the legal presumption is that the court ruled correctly, and in order to have the matter revised on appeal, the bill of exceptions must state matters which would show the error in the ruling of the trial court. Following Ortiz v. State, 68 Texas Crim. Rep., 608.

### 5.—Same—Election by State—Practice.

Where the defendant was indicted in one count for theft in another State and bringing the property into this State, and in another count for receiving such property and bringing it into this State, there was no error in the court's refusing to force the State to an election; besides, the latter count alone was submitted. Following Goode v. State, 57 Texas Crim. Rep., 220.

### 6.—Same—Evidence—Corporation—Oral Testimony.

Where there was no effort made to show for what purpose the alleged company was incorporated, but merely the fact that it was an incorporated company, the objection that the incorporation could not be proved by oral testimony is untenable.

### 7.—Same—Evidence—Identity—Bill of Exceptions.

Upon trial of receiving stolen property in another State and bringing the same into this State, where the State's witness testified that he was able to identify the goods found as the goods stolen from him, which testimony was somewhat weakened on cross-examination, the latter would go to the credit of the witness, and not to the admissibility of the testimony; besides, the bill of exceptions was defective, it not pointing out specifically the supposed objectionable portion of the testimony. Following Ortiz v. State, 68 Texas Crim. Rep., 608, and other cases.

### 8.—Same—Evidence—Conspiracy.

The statement of all the conspirators during the pending of the conspiracy is admissible in evidence, and where it was shown that the conspiracy to convert the property alleged to have been stolen, and received by defendant to the use of the defendant and his companions was not completed, the statements of each and all of them were admissible in evidence. Following O'Neal v. State, 14 Texas Crim. App., 582, and other cases.

### 9.—Same—Rule Stated—Evidence—Conspiracy—Statements of Co-conspirators.

Acts and declarations of one conspirator in furtherance of the common design are admissible against another conspirator pending the conspiracy and until its final termination; including anything that was within the contemplation of the conspiracy, such as dividing the spoils, or any of those matters that may be subsequent to, but included in the scope of the conspiracy. Following Long v. State, 55 Texas Crim. Rep., 55, and other cases.

**10.—Same—Rule Stated—Co-conspirators.**

What is said and done by any of the conspirators pending the conspiracy and in furtherance of the common design is admissible against the one on trial, though said and done in his absence. Following Wallace v. State, 46 Texas Crim. Rep., 341, and other cases.

**11.—Same—Acts of Defendant—Requested Charge—Possession.**

Upon trial of receiving stolen property in another State and bringing the same into this State, it was not necessary that defendant himself should ship the goods to Texas, if he was the procuring cause to have them so shipped, and the fact that the owner of the goods employed a drayman to carry the alleged stolen goods to the depot from which they were stolen would not take them out of his possession; and there was no error of the court's refusal of the requested charge.

**12.—Same—Charge of Court—Requested Charge—Grand Jury—Testimony.**

A grand jury is authorized to return an indictment on examining trial testimony, and there was no error in the refusal of a requested charge that the witnesses must be personally present before the grand jury.

**13.—Same—Circumstantial Evidence—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of receiving stolen property in another State and bringing the same into this State, the evidence was circumstantial, and the court gave a full and fair charge on circumstantial evidence, and the same sustained a conviction, there was no error. Davidson, Presiding Judge, dissenting.

**14.—Same—Indictment—Original Taking.**

Upon trial of receiving stolen property in another State and bringing the same into this State, where the indictment specifically alleged that the offense charged would also have been receiving stolen property by the law of the foreign State, and that the same would be an offense in this State, it was not necessary to allege the facts going to constitute theft against the original taker from whom the property was received. Following Hodges v. State, 22 Texas Crim. App., 415, and other cases.

**15.—Same—Indictment—Time and Place.**

Where the indictment alleged the time and place the defendant received the property in the foreign State, knowing the same to have been stolen, and thereafter, on or about a certain date, brought the same into this State, it was not necessary to name the place in the foreign State where the goods were received; however, where this was alleged, it was not a descriptive allegation, and no proof thereof was necessary, and the allegation was mere surplusage; besides, such proof was sufficiently made. Following Gordon v. State, 2 Texas Crim. App., 154, and other cases, on first proposition, and on latter proposition, Polk v. State, 66 Texas Crim. Rep., 654, and other cases.

**16.—Same—Motion for Rehearing—Practice on Appeal.**

Where appellant, in his second amended motion for rehearing, assigned errors on grounds not assigned in the motion for new trial in the court below nor assigned in the original motion for rehearing in this court, the same must be stricken from the record.

Appeal from the District Court of Milam. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of receiving stolen property in another State and bringing same into this State; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*U. S. Hearrell* and *M. G. Cox* and *W. A. Morrison* and *Lightfoot, Brady & Robertson,* for appellant.—On question of insufficiency of proof of county of original reception of stolen goods: McAllister v. State, 56 Texas Crim. Rep., 188, 116 S. W. Rep., 582; Martinez v. State, 51 Texas Crim. Rep., 584, 103 S. W. Rep., 930; Tucker v. State, 59 Texas Crim. Rep., 291, 128 S. W. Rep., 617; Robinson v. State, 60 Texas Crim. Rep., 592, 132 S. W. Rep., 944; Wade v. State, 52 Texas Crim. Rep., 619; Snelling v. State, 57 id., 416; Early v. State, 56 id., 61; Stiff v. State, 21 Texas Crim. App., 255; Withers v. State, 21 id., 210.

On question of time and place of receiving stolen property: State v. Slack, 30 Texas, 354; Johnson v. State, 32 id., 96; State v. Tandy and Eubanks, 41 id., 291; Walker v. State, 7 Texas Crim. App., 52.

On question of insufficiency of indictment: Carmisales v. State, 11 Texas Crim. App., 474; Cummins v. State, 12 id., 121; Fernandez v. State, 25 id., 538; Edwards v. State, 29 id., 452; McKenzie v. State, 32 Texas Crim. Rep., 568; State v. Morales, 21 Texas, 298.

On question of severance: Dodson v. State, 32 Texas Crim. Rep., 529; King v. State, 35 id., 472; Reed v. State, 11 Texas Crim. App., 509.

On question of possession of owner: Alexander v. State, 24 Texas Crim. App., 126; Piper v. State, 56 Texas Crim. Rep., 121.

On question of conspiracy: Luttrell v. State, 31 Texas Crim. Rep., 493.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was prosecuted under an indictment charging, first, that appellant was guilty of theft in the State of Missouri and brought the stolen property into this State. This count was not submitted to the jury. The second count, which was submitted and under which he was convicted, omitting formal parts, charges: That appellant on or about the 31st day of October, A. D. 1910, in the county of St. Louis, State of Missouri, and anterior to the presentment of this indictment did unlawfully and fraudulently receive from Lefty Linnaman and other parties, to the grand jury unknown, certain corporeal personal property (here follows a description of the property, and its value); the same then and there "being the property of and belonging to the Sanders Duck '& Rubber Company, a corporation duly incorporated under the laws of Missouri, and which said property had theretofore been acquired by the said Lefty Linnaman and other parties, to the grand jurors unknown, in such manner as that the acquisition of the same comes within the meaning of the term 'theft'; the said Louis Zweig then and there well knowing the same to have been so acquired at the time he received the same as aforesaid, and which said acts by the said Louis Zweig were, by the laws of the State of Missouri, then and there in force, the offense of receiving stolen property; and which acts, if the same had been committed in the State of Texas, would, under the laws of the said State of Texas then and there in force, have been

the offense of receiving stolen property; and the said Louis Zweig did afterwards unlawfully, viz: on or about the twenty-first day of November, A. D. 1910, bring the aforesaid property into the State of Texas and into the county of Milam." We have copied the indictment because many of the contentions of appellant are based thereon.

The first complaint is that the count in the indictment is insufficient because it fails to allege the date that Lefty Linnaman and others committed the theft. While appellant says in his brief he has been unable to find any authorities on this question, yet, he earnestly insists that it is essential that the date of the original theft shall be stated. By reading the indictment it is seen that appellant is prosecuted for receiving stolen property, knowing that it had been stolen and bringing it into this State. Whether or not it is necessary in an indictment charging one with receiving stolen property, to allege the date of the original theft, is no new question in this State. When the Supreme Court had jurisdiction in criminal matters this question was before them in the case of Perkins v. State, 45 Texas, 10, and they held that it was unnecessary to allege "*the time and place* of the original taking," citing Bishop's Crim. Proc., sec. 928. And since the creation of this court, in the case of Brothers v. State, this question is again decided adversely to appellant's contention, this court saying:

"Is it essential to the validity of a charge for receiving stolen property that the count shall contain a direct, distinct and affirmative allegation of all the facts going to constitute theft against the original taker from whom it has been received? The pleader, it will be noted, has followed substantially Form No. 512, prescribed for receiving stolen property, in Willson's Criminal Forms, page 220 (now sec. 1524, White's Ann. Code). Under the great weight of authority, the form is unquestionably sufficient. (See Whart., Precedents and Indictments, 4 ed., No. 450; 2 Archbold's Crim. Practice and Pleading, 8 ed., top p. 1425, side p. 474.)

"Speaking of the offense of receiving stolen property, Mr. Bishop says of the indictment: 'As in larceny so in receiving, the transaction is identified by the description of the stolen things and their ownership. The thing stolen must be described in the same manner as in larceny. The name of the thief is not identifying matter, and hence it need not be alleged. The owner's name is essential to identification; hence it must be stated if known. Commonly in England and in numbers of our States, the indictment does not aver from whom the stolen goods were received. Some of our American cases require it.' (2 Bish. Crim. Prac., 3 ed., secs. 982, 983; and to the same effect see 1 Whart. Crim. Law, 8 ed., sec. 997.) In Texas it has been the rule that an indictment for receiving stolen property must allege the name of the owner of the property, if known, and the name of the person from whom received. (State v. Perkins, 45 Texas, 10.) Judge Willson's form is sustained by all standard authorities, and the count here complained of is in compliance with said form. It was not error to overrule the motion to quash. (Nourse v. The State, 2 Texas Crim. App., 304.)" In these and cases cited in

them will be found a discussion of all questions raised by appellant in his motion to quash, and which decide all of them adversely to him.

A serious question in the case is that the State, having alleged that appellant received the stolen property "in the County of St. Louis," that the proof must show that he received the property in that county. Is this an essential allegation in the indictment? As applicable to this case, article 951 of the Code reads: "If any person having received stolen property in any other State, knowing the same to have been stolen, shall bring into this State any property so acquired or received, he shall be deemed guilty of receiving stolen property, and shall be punished as if the offense had been committed in this State." Are the words in the "County of St. Louis," not being an element of the offense (for it was wholly unnecessary to allege in what county in Missouri the property was received as held by all the authorities) in anyway descriptive of the identity of what is legally essential to the charge contained in the indictment? In the case of Mayo v. The State, 7 Texas Crim. App., 342, the question of what is descriptive of the offense and what may be treated as a surplus allegation, is discussed at length and the rule is said to be: "A rule almost fundamental is that no allegation, whether it be necessary or unnecessary, or more or less particular, which is descriptive of the identity of what is legally essential to the charge in the indictment, can be rejected as surplusage. 1 Bishop's Cr. Proc., sec. 485; Warrington v. The State, 1 Texas Crim. App., 168. But allegations not essential to constitute the offense, and which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are treated as mere surplusage, and may be entirely disregarded. United States v. Howard, 3 Sumn., 12. And where an indictment contains matter unnecessary to a description of the offense, it may be rejected. The State v. Coppenburg, 2 Strobh., 273. Again, if, eliminating surplusage, an indictment so avers the constituents of the offense as to apprise the defendant of the charge against him, and enable him to plead the judgment in bar of another prosecution, it is good in substance under our Code. Coleman v. The State, 2 Texas Crim. App., 512; Burke v. The State, 5 Texas Crim. App., 74. A variance in the name in an indictment will not be fatal if the name be immaterial to constitute the offense and may be rejected as surplusage. 2 East P. C., 593; Roscoe's Cr. Ev., 82." Tested by this rule, the words "County of St. Louis" may be rejected as surplusage, and still all the elements would be charged and the indictment would be so definite that appellant could successfully plead it in bar of any subsequent prosecution for this offense. In the case of Clark v. State, 41 Texas Crim. Rep., 641, Presiding Judge Davidson aptly states the correct rule:

"This is a well settled principle of criminal pleading: If, eliminating surplusage, the indictment so avers the constituent elements of the offense as to apprise the defendant of the charge against him, and enable him to plead the judgment in bar of another prosecution, it is good in substance, under our Code, and therefore sufficiently charges the offense.

McConnell v. State, 22 Texas Crim. App., 354; Coleman v. State, 2 Texas Crim. App., 512; Burke v. State, 5 Texas Crim. App., 74; Mayo v. State, 7 Texas Crim. App., 342; Holden v. State, 18 Texas Crim. App., 91; Cudd v. State, 28 Texas Crim. App., 124; Hammons v. State, 29 Texas Crim. App., 445; Taylor v. State, 29 Texas Crim. App., 466; Lomax v. State, 38 Texas Crim. Rep., 318." Numerous other cases might be cited but we do not deem it necessary to do so. If it was essential to allege that the property was received in any certain county in a State, or if the allegation was descriptive of any essential allegation in the indictment, the authorities cited by appellant would be in point, but as it was wholly unnecessary under our Code to allege in what county the property was received, and where the words are used, they are not descriptive of what is legally essential to state in the indictment, and further, when these words are omitted, the indictment specifically charges an offense under our Code and in language that it could be plead in bar of any other prosecution for that offense, we hold that the trial judge did not err in treating these words as mere surplusage. Entertaining this view it is unnecessary to discuss or determine whether or not the City of St. Louis is or is not in fact a part and parcel of the County of St. Louis, nor the many questions raised by objecting to testimony in regard thereto, nor the special charges asked in relation solely to that question. The gist of the offense in this character of case is the bringing of the stolen property into this State, and it was not essential to allege in what county it was received, and if we should be mistaken in the holding that it was not a "descriptive averment" necessary to be proven, and it should be held to be such a descriptive averment as it must be proven as alleged, then an allegation of that character may be proven by facts which would show that it was generally so spoken of and understood. If it be conceded that the laws of the State of Missouri, introduced in evidence, show that the City of St. Louis is a separate and distinct municipality from the County of St. Louis, yet the same evidence shows that the City of St. Louis is wholly surrounded by the County of St. Louis, and if we are to give credence to the testimony adduced on the trial, it has always been spoken of and considered a part of the County of St. Louis. While it may be said that the laws of the State of Missouri give to the city an independent political existence, yet these same laws show that the City of St. Louis is wholly within the territorial bounds of the County of St. Louis, it being carved out of that county, and the limits of the county entirely surround the City of St. Louis. It is by the record shown that in the City of St. Louis it is generally spoken of and described as within the County of St. Louis. By all the testimony it is shown that the goods were stolen in the City of St. Louis, and Mr. Sanders testified: "Those goods were taken from me in the County of St. Louis and State of Missouri without my consent." Frank McKenna testified that the City of St. Louis was within the bounds of the County of St. Louis, and was always spoken of as being within that county. In fact, outside of the bare fact that laws of the State had carved out a part of the County of St. Louis and had

given it to some extent at least a separate and independent political existence, the record would disclose that it is always spoken of and generally understood to be within the County of St. Louis. And if it should be held that having stated the goods were stolen from Sanders Duck & Rubber Company in the County of St. Louis it became a descriptive averment and must be proven as alleged, then it has always been the rule in this State that a descriptive averment of this character may be sustained by proof that it is usually so spoken of and understood. Dignowitty v. State, 17 Texas, 521, and cases cited in Roman v. State, 64 Texas Crim. Rep., 515, 142 S. W. Rep., 912. In Mr. Underhill's work on Criminal Evidence, the rule is said to be: "The strict technical rules formerly governing this subject have been greatly relaxed, if not altogether abrogated, by statutory enactment or by the liberal spirit of the modern courts of criminal jurisdiction. In determining whether a variance is material, the question to be decided is, does the indictment so far fully and correctly inform the defendant of the criminal act with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense, or placed in danger of being twice put in jeopardy for the same offense?"

In this case it can be positively said that appellant could not have been misled in making his defense, and he would certainly be able to plead this prosecution in bar of any subsequent prosecution for the offense. So if we are mistaken in holding that the words "County of St. Louis" was not necessary to be alleged to constitute the offense, and could and should be treated as surplusage, then we think such an allegation as can be proven by evidence that it was so called, termed and spoken of, and in either event the court did not err in the premises.

Appellant next complains of the action of the court in overruling his application for a severance, neither the application nor the bill reserved makes it manifest that Henry Zweig had ever been arrested; or that he was willing to be first tried; nor was it shown whether Henry Zweig had been indicted as an accomplice, principal or accessory to the offense, nor that granting same would not have resulted in a continuance. If he was indicted as an accessory to the offense, this court has held that under the law he could not be first tried. In Williams v. State, 27 Texas Crim. App., 471, we held: "It was not error to refuse the defendant's motion to put John West upon trial before trying the defendant. Said West was indicted as an accessory to the theft charged against the defendant, and it is expressly provided that where 'the principal is arrested he shall be first tried.' (Penal Code, art. 90.) The defendant being the principal, and under arrest, it was not only proper but obligatory upon the court to try him first. This requirement of the statute is special and controls the general provision relating to the severance on trial of defendants. (Code Crim. Proc., art. 669a.)" As said by this court in Edgar v. State, 59 Texas Crim. Rep., 252, on appeal the legal presumption is that the court ruled correctly, and to have the matter revised by us on appeal the bill must state matters which would show the error in the ruling of the court. If Henry

Zweig was under arrest, and willing to be tried, and to have granted the application would not have worked a continuance, and the indictment against him did not charge him with being an accessory, these facts should have been shown, in order to avail appellant of this ground in the motion for new trial. For correct rule in regard to these matters see Ortiz v. State, 151 S. W. Rep., 1058, and cases there cited.

There was no error in the court refusing to make the State elect under which count in the indictment it would ask for a conviction at the close of the testimony offered in behalf of the State. In section 300 of Branch's Criminal Law he correctly states the rule to be: "If only one transaction is charged, and different counts are contained in the indictment to meet the possible phases the testimony may assume, the State will not be required to elect," citing Goode v. The State, 57 Texas Crim. Rep., 220, and numerous other cases which will be found noted in that section.

In bill of exception No. 1 it is shown that appellant objected to the witness H. A. Sanders testifying that the Sanders Duck & Rubber Company was a corporation. As no effort was made to show for what purposes the company was incorporated, but merely the fact that it was an incorporated company, the court did not err in the matter. This was a fact that the witness personally knew.

In bill No. 9 is set out the testimony of this witness almost in full, covering some twelve pages of the record, at the conclusion it being stated that the objections were that the witness was "incompetent to testify as to the identity of the goods alleged to have been obtained as shown by his testimony." Mr. Sanders testified that he was able to identify the goods found, as the goods stolen from him, and while appellant might contend that his cross-examination weakened that statement, yet this would go to the credit of the witness and not the admissibility of the testimony. As stated in Ortiz v. The State, 68 Texas Crim. Rep., 608, 151 S. W. Rep., 1056, "a bill of exceptions is too general for consideration if it includes a number of statements, some of which are clearly admissible, and there is nothing in the objection pointing out specifically the supposed objectionable portions of the evidence," citing Branch's Criminal Law, section 47, and numerous authorities. And the same might be said as to the testimony of M. Bourlandt, which covers some eight pages of the record, and at the last the objection being stated, "for the reason that the testimony in reference to statements made by Henry Zweig, not in the presence of defendant were not admissible against appellant." However, we will state that the record disclosed that appellant, Henry Zweig, and Bourlandt were in business as partners at Cameron, Milam County; that if the State's theory is correct, appellant was in St. Louis and shipped the alleged stolen goods from St. Louis to an address in Taylor, Texas; at the suggestion of Henry Zweig, Bourlandt went to Taylor, paid the freight and reshipped the goods to Zweig & Bourlandt at Cameron; that the goods were there received, and by Henry Zweig and Bourlandt, and when they learned that they were likely to be caught in possession of the goods they sought

to conceal them. That appellant then came to Cameron and reshipped the goods to another point, where they were finally discovered and identified as the stolen goods by Mr. Sanders. The statement of all the conspirators during the pending of the conspiracy is always admissible in evidence, and as it is shown that the conspiracy to convert these goods to the use of appellant, Henry Zweig, and Bourlandt was not completed; and when it was learned that the theft was about to be discovered, it was sought to conceal the goods, the statements of each and all the conspirators were admissible, and the court did not err in admitting the statements of Henry Zweig which he did admit. In Branch on Crim. Law, sec. 240, it is said:

"Acts and declarations of one conspirator in furtherance of the common design are admissible against another conspirator pending the conspiracy and until its final termination. This proposition includes anything that was within the contemplation of the conspiracy, such as dividing the spoils, or any of those matters that may be subsequent to, but included in the scope of the conspiracy. O'Neal v. State, 14 Texas Crim. App., 582; Rix v. State, 33 Texas Crim. Rep., 353, 26 S. W. Rep., 505; Franks v. State, 36 Texas Crim. Rep., 149, 35 S. W. Rep., 977; Small v. State, 40 S. W. Rep., 790; Long v. State, 55 Texas Crim. Rep., 55, 114 S. W. Rep., 632; Gracy v. State, 57 Texas Crim. Rep., 68, 121 S. W. Rep., 706; Milo v. State, 59 Texas Crim. Rep., 196, 127 S. W. Rep., 1025; Kipper v. State, 45 Texas Crim. Rep., 377, 77 S. W. Rep., 611; Holt v. State, 39 Texas Crim. Rep., 282, 46 S. W. Rep., 829; Eggleston v. State, 59 Texas Crim. Rep., 542, 128 S. W. Rep., 1105.

"What is said and done by any of the conspirators, pending the conspiracy and in furtherance of the common design, is admissible against the one on trial, though said and done in his absence. Wallace v. State, 46 Texas Crim. Rep., 341, 81 S. W. Rep., 966; Barber v. State, 69 S. W. Rep., 515; Trevinio v. State, 38 Texas Crim. Rep., 64, 41 S. W. Rep., 608; Dobbs v. State, 51 Texas Crim. Rep., 113, 100 S. W. Rep., 946; Reno v. State, 55 Texas Crim. Rep., 260; Smith v. State, 21 Texas Crim. App., 96, 17 S. W. Rep., 560; Armstead v. State, 22 Texas Crim. App., 51, 2 S. W. Rep., 253; Richards v. State, 53 Texas Crim. Rep., 400, 82 S. W. Rep., 520; Williams v. State, 45 Texas Crim. Rep., 240, 75 S. W. Rep., 509; Chapman v. State, 45 Texas Crim. Rep., 479, 76 S. W. Rep., 477; Hannon v. State, 5 Texas Crim. App., 549, 3 Texas Crim. App., 200; Moore v. State, 15 Texas Crim. App., 1; Eggleston v. State, 59 Texas Crim. Rep., 542, 128 S. W. Rep., 1105."

It was not necessary that appellant himself should ship the goods from Taylor to Cameron. If he was the procuring cause to have the goods shipped from St. Louis to the address at Taylor, and his partners or one of them, at his instance, reshipped the goods from Taylor to Cameron, he would be legally responsible for the act of bringing the goods into Milam County, and the court did not err in refusing special charge No. 2 on this phase of the case. Mr. Sanders testified that he was in charge of the corporation and its property. The fact that he employed a drayman to carry them to the depot from which place they

were stolen, would not take them out of his possession. The possession of the drayman, under such circumstances, was temporary, and they remained in Sanders' possession until delivered to the railway company, and the court did not err in refusing the special charges in regard to such possession.

Special charge No. 7 was covered by the court's main charge; therefore, it was unnecessary to give it. Under the evidence in ·this case special charge No. 8 was not called for. Appellant apparently proceeds on the theory that the witnesses must be personally before the grand jury. This is not the law. Examining trials are held, and testimony taken, reduced to writing and sworn to, which is transmitted to the grand jury. The grand jury is authorized to return an indictment on this testimony if they deem it sufficient, and the evidence shows the testimony adduced at the examining trial was before the grand jury and considered by them.

It may be said that the evidence relied on by the State to prove that appellant received the goods from the persons named in the indictment is circumstantial. The court gave a full and fair charge on circum-. stantial evidence, and the circumstances would fully authorize the jury to find appellant guilty under the second count in the indictment. The circumstances would show appellant in possession of these goods in Mayer Katz's yard, boxing them for shipment; they are shipped from St. Louis, and placed in his store in Cameron, and when he ascertains search is being made for them, he in person ships a portion of them away from Cameron to avoid detection. Lefty Linnaman is placed in such juxtaposition to appellant as authorized a finding that he was the person from whom appellant received the goods.

We have carefully reviewed each bill of exceptions, and ground in the motion for new trial, and are of the opinion that the court properly submitted the case on circumstantial evidence, and the evidence is amply sufficient to support the verdict.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE, dissenting.

### ON REHEARING.

March 11, 1914.

HARPER, JUDGE.—On motion for rehearing it is insisted that as the second count in the indictment, charging appellant with receiving stolen property and bringing same into this State, did not allege that the manner Lefty Linnaman had obtained the goods constituted theft under the laws of the State of Missouri, and the same acts would constitute theft under the laws of this State, that this count in the indictment is for that reason fatally defective. Receiving property known to have been stolen, and bringing same into this State is a separate and distinct offense from the original taking, and it will be noticed in the

original opinion that this count in the indictment does allege that goods had been acquired in such manner as the acquisition of the same came within the meaning of the term "theft" and "the said Louis Zweig then and there well knowing the same to have been so acquired at the time he received the same as aforesaid, *and which said acts by the said Louis Zweig were, by the laws of the State of Missouri, then and there in force, the offense of receiving stolen property;* and which acts, if the same had been committed in the State of Texas, *would, under the laws of the said State of Texas then and there in force, have been the offense of receiving stolen property;* and the said Louis Zweig did afterwards unlawfully, viz: on or about the twenty-first day of November, A. D. 1910, bring the aforesaid property into the State of Texas, and into the County of Milam." Article 1431 of the Penal Code provides if any person having committed an offense in a foreign country, state or territory, which if committed in this State would have been receiving of stolen property, knowing the same to have been stolen, shall bring into this State any property so received he shall be deemed guilty of receiving property stolen, knowing the same to have been stolen, and shall be punished as if the offense had been committed in this State. Article 1432 provides that it must be made to appear that the *offense charged* would also have been receiving stolen property by the law of the foreign country, state or territory. This the indictment specifically alleges, and it was not necessary to allege in the indictment the facts going to constitute theft against the original taker from whom the property was received. (Hodge v. State, 22 Texas Crim. App., 415; Brothers v. State, 22 Texas Crim. App., 447.) In the first count in this indictment (which was not submitted to the jury) wherein appellant was charged with theft of the goods, it was alleged "which said acts by the said Louis Zweig were, by the laws of the State of Missouri, then and there in force, the offense of theft; and which said acts, if committed in the State of Texas, would, under the laws of the State of Texas then and there in force, have been theft, and the said defendant did afterwards unlawfully bring the aforesaid property into the State of Texas, and into the County of Milam." In the case of Morgan v. State, 31 Texas Crim. Rep., 1, on page 7, this court held:

"There were five counts in the indictment preferred against the defendant; the first being one for theft, and the other four charging appellant with receiving stolen property, knowing the same to have been stolen. The verdict of the jury was: 'We, the jury, find the defendant guilty as charged, and assess his punishment at confinement in the penitentiary for two years.' The judgment rendered upon this verdict was one finding the defendant guilty of fraudulently receiving stolen property, knowing the same to have been stolen.

"It is insisted on this appeal that the verdict and judgment must have been predicated upon the second count in the indictment; and it is further insisted, that if such be the case, the verdict and judgment can not stand, because the said second count is fatally defective, in that it fails to state or allege in terms the date when and the place and county

in which the said offense was committed. The date and the county were properly alleged in the first count of the indictment, which was the count for theft. This being so, it was unnecessary to repeat the date and county in the second count. In the case of Hutto v. State, 7 Texas Crim. App., 44, where, in the second count of the indictment, the name of the month was written 'Janury,' and in the first count, which was dismissed, it was correctly spelled, it was held that the motion in arrest of judgment was correctly overruled; and the case of Wills v. State, 8 Missouri, 52, was cited, wherein it was held, that where a nolle prosequi to the first of two counts of an indictment was entered, and the time of committing the offense was only shown by reference to the first count, the defendant might be tried and convicted on the second count. Boles v. State, 13 Texas Crim. App., 650. See also Regina v. Waverton, 2 Lead. Crim. Cases (2d ed.), 157. The particular objection to the second count, as above stated, is not well taken."

And in the case of Dancey v. State, 35 Texas Crim. Rep., 615, this court held: "While it has been decided that each count, as to the charging part, is independent of every other count, still the preceding count or counts may be looked to to supply auxiliary allegations—to supply defects in subsequent counts," citing Boren v. State, 23 Texas Crim. App., 28; Boles v. State, 13 Texas Crim. App., 650. What is the office and purpose of an indictment? It is to notify one of the offense with which he is charged, and the elements thereof, that he may properly prepare his defense, and usually when an offense is charged in the language of the statute, this is sufficient. The indictment in this case charged appellant in specific terms that he received stolen goods from Lefty Linnaman, knowing they had been stolen, and brought them into this State, and is sufficient in law to charge this offense, and specifically alleged that the acts committed by appellant were a violation of the laws of the State of Missouri, and if committed by him in this State, would have been a violation of the laws of this State.

The indictment in this case does allege the time and place. It first alleges that on or about the 31st day of October appellant received the property in the State of Missouri, knowing the same to have been stolen, and thereafter on or about the 21st day of November he brought the stolen property into this State. But appellant insists that it was necessary to name the *place in the foreign State* where the goods were received. This requisite is not stipulated in articles 1431 and 1432 of the Penal Code, and to so hold would be for us to add to the elements of the offense. However, appellant insists that if mistaken in that contention, then as the pleader elected to allege that the goods were received in the County of St. Louis, in the State of Missouri, then it became necessary to prove the allegation as alleged. In the original opinion we showed that the statute (arts. 1431 and 1432) did not require the indictment to state the point within the foreign State where the goods were received, but only that they were received in such foreign State and brought into this State, and the county brought to, to show that such county had venue of the offense, and such allegation not being a requisite of the indict-

ment, same might be rejected as surplusage. In the case of Dent v. State, 65 S. W. Rep., 627, on page 634, this court held: "Redundant allegations, and those which are in no manner necessary to a description of the offense, and which are not essential to constitute the offense, and which can be entirely omitted without affecting the charge against the accused, and without detriment to the indictment, are treated as mere surplusage, and may be entirely disregarded as part of the indictment. Gordon v. State, 2 Texas Crim. App., 154; Burke v. State, 5 Texas Crim. App., 74; Hampton v. State, id., 463; Mayo v. State, 7 Texas Crim. App., 342; Smith v. State, id., 382; Rivers v. State, 10 Texas Crim. App., 177; Gibson v. State, 17 Texas Crim. App., 574; Holden v. State, 18 Texas Crim. App., 91; Moore v. State, 20 Texas Crim. App., 275; McConnell v. State, 22 Texas Crim. App., 354, 3 S. W. Rep., 699, 58 Am. Rep., 647; Osborne v. State, 24 Texas Crim. App., 398, 6 S. W. Rep., 536; Watson v. State, 28 Texas Crim. App., 34, 12 S. W. Rep., 404; Cudd v. State, 28 Texas Crim. App., 124, 12 S. W. Rep., 1010; McLaurine v. State, 28 Texas Crim. App., 530, 13 S. W. Rep., 992; Finney v. State, 29 Texas Crim. App., 184, 15 S. W. Rep., 175; Hammons v. State, 29 Texas Crim. App., 445, 16 S. W. Rep., 99; Taylor v. State, 29 Texas Crim. App., 466, 16 S. W. Rep., 302; Waters v. State, 30 Texas Crim. App., 284, 17 S. W. Rep., 411; McDaniel v. State, 32 Texas Crim. Rep., 16, 21 S. W. Rep., 684, 23 S. W. Rep., 989; Loggins v. State, 32 Texas Crim. Rep., 358, 24 S. W. Rep., 408; Williams v. State, 35 Texas Crim. Rep., 391, 33 S. W. Rep., 1080; Lassiter v. State, 35 Texas Crim. Rep., 540, 34 S. W. Rep., 751; Webb v. State, 36 Texas Crim. Rep., 41, 35 S. W. Rep., 380; Jordan v. State, 37 Texas Crim. Rep., 222, 38 S. W. Rep., 780, 39 S. W. Rep., 110."

Appellant insists that if it was not necessary that the county in the foreign State where the goods were received should be named (and articles 1431 and 1432 show that it was not necessary to do so, as the place is sufficiently alleged where the State is named where the goods were received) yet as they were named, such allegation became descriptive of the offense, and had to be proved as alleged. We do not think such allegation can be said to be descriptive of the offense herein alleged, but if so the proof met the allegation, for while it is shown that the City of St. Louis is a separate and distinct entity from the county, yet Messrs. Sanders and McKenna testify positively that it was generally spoken of and referred to as being within the County of St. Louis, and there was no evidence offered to the contrary. And where the proof, and all the proof, shows this to be true, it was not necessary to submit that issue to the jury. Had appellant offered any testimony that it was not so generally spoken of, understood and referred to, then there would have been an issue raised, and it would have been necessary to submit it to the jury. Polk v. State, 66 Texas Crim. Rep., 654, 148 S. W. Rep., 311; Pendy v. State, 34 Texas Crim. Rep., 643; Bird v. State, 16 Texas Crim. App., 528; Lott v. State, 24 Texas Crim. App., 723, 27 Texas Crim. App., 44. So it is seen that the allegation if it be conceded that it is descriptive and must be proven as alleged, it has

been held in this State that if it was so commonly called, referred to and spoken of as alleged, upon proof of this fact this would present no variance. Mr. Wharton in his work on Criminal Law, says: "Variance in criminal law is not now regarded as material unless it is of such substantive character as to mislead the accused in preparing his defense, or would place him in second jeopardy for the same offense," and in the case of Woodward v. Barth, 7 Barn. & Cres., 301, it was held a "declaration in the pleadings that the plaintiff delivered a trunk to be put on the coach at Chester, in the County of Chester, was held supported by evidence that it was delivered in the City of Chester, which is a county of itself, separate from the County of Chester at large."

So we hold, as in the original opinion, that it was unnecessary to allege in the indictment the point or place in the State of Missouri appellant received the goods, it being necessary to state only that he received them in that State, and such act was a violation of the law of that State, and he brought them into Texas, and if his acts if done here would constitute a violation of the law, and the allegation of the point or place of reception in Missouri, being an unnecessary allegation, it may and should be treated as surplusage. In the proof, if not alleged, it would not be necessary to make proof of the point and place he received them in Missouri, only that he received them in Missouri. We are also of the opinion that it is not descriptive of the offense, for it is in no sense descriptive of the goods he received, nor did it tend to identify them, and as the point in the State was an unnecessary allegation, nor would it be in anywise descriptive of the State in which he received them. But if it should be held that the place of reception in any manner was necessary or in anywise descriptive of the offense, the proof showing that the place he received them was generally known, referred to and called the place named in the indictment as the place of reception, this would present no material variance, and the proof is sufficient to sustain the allegation. It can not nor is it insisted that he was in anywise misled by such allegation, nor that a plea of former jeopardy would not lie and prevail should it be attempted to prosecute him for the offense alleged. Mr. McKenna testified to seeing Lefty Linnaman in possession of these goods. "I saw Lefty Linnaman and Sam Mintz on the 21st day of November, 1910, in a stable at 2205 North Market Street. Lefty Linnaman was nailing the top on the boxes, preparing to ship the stuff. Sam was in there with him, standing by." David Bloomfield testified he saw appellant in St. Louis in Mayer Katz's yard; that Lefty Linnaman was with him; that appellant admitted it was crooked goods he had there in the yard; that he saw rubber coats, yellow slickers, etc., they being the goods as shown by the evidence and circumstances afterwards found in Texas. He testified that this was the only time he ever saw Lefty Linnaman at Katz's house, and that was the time he heard appellant order Lefty Linnaman to deliver the goods to the storage house. Appellant in his motion for rehearing insists that this possession here shown would come nearer showing him to be the original thief than a receiver of the stolen goods.

If this was all the evidence in the record, this contention might be presented with some force, but the evidence discloses that Lefty Linnaman resided in St. Louis, had the reputation of being a professional thief; was engaged in thefts similar to this, and had been convicted since this offense was committed of theft of just such goods; while appellant resided in Texas, and if the State's case is true, was there but temporarily, and if his contention is true, he was not in St. Louis, but in Texas at this time, and considering all the facts and circumstances in evidence, while the indictment charged both theft and receiving stolen property, and the court could have submitted both counts to the jury, yet we do not think the court erred in not submitting the count charging him with theft of the goods, and in submitting the count charging him with receiving stolen goods, knowing they were stolen. And that he knew they were stolen goods is evidenced by his acts after the goods had been received in Cameron, Texas, for upon learning that an investigation was being made in Texas in regard to these goods, he takes them out of his store in Cameron, ships them to Rockdale, giving his name as Gordon. They are then shipped to Taylor, where they are found by Mr. McKenna, identified by Mr. Sanders, and shipped back to Cameron. Here Mr. Sanders asserted his claim to the goods; appellant does not contest this claim, but allows Mr. Sanders to take possession and reship them to St. Louis. Had he not known they were stolen goods he would not have quietly stood by and let Mr. Sanders take them.

While many questions are raised again on the motion for rehearing, and we have thoroughly considered them, we are of the opinion they were correctly disposed of in the original opinion, and it is not necessary to write further.

The motion for rehearing is overruled.                          *Overruled.*

DAVIDSON, JUDGE, dissenting.

ON REHEARING.

March 25, 1914.

HARPER, JUDGE.—Appellant has filed a motion asking leave to file a second amended motion for rehearing in this cause, after the motion for rehearing had been overruled on March 11, 1914. In this second amended motion he seeks to assign errors on grounds not assigned in the motion for new trial in the court below, nor assigned in the motion for rehearing in this court. Under such circumstances such grounds were not considered in the original opinion, nor in the opinion on the motion for rehearing, and can not, under the law of this State governing such matters, be now considered by us, and the second amended motion for rehearing, filed with the clerk on March 12th, be and the same is here now ordered stricken from the record, and the clerk of this court is ordered to issue the mandate in this cause.

*Mandate ordered.*

[This case did not reach hands of Reporter until June, 1914.—Reporter.]