SAM ROMAN v. THE STATE.

No. 1449.   Decided December 13, 1911.

Rehearing January 24, 1912.

**1.—Theft—Burglary—Former Jeopardy.**

The offenses of burglary and theft, although growing out of the same transaction, constitute two separate and distinct offenses, and where the defendant had been acquitted of burglary growing out of the same transaction, the court properly overruled his plea of former jeopardy upon his trial for theft. Following Loadman v. State, 32 Texas Crim. Rep., 563, and other cases.

**2.—Same—Description—Variance—Statutes Construed.**

Where the indictment charged the alleged stolen property to be lard, and the evidence showed that the compound taken by the defendant had the appearance of hog lard, and was generally so called and used, there was no variance, although experts testified that it was a lard compound composed of oil and other matter, and was not made from the plea of former the fat of the hog; a particular description of the property not being necessary in the indictment. Following Dignowitty v. State, 22 Texas, 531, and other cases. Article 448, Code Criminal Procedure construed.

**3.—Same—Principals—Charge of Court.**

Where, upon trial of theft, there was circumstantial evidence connecting the defendant with the original taking of the alleged stolen property, the court properly instructed the jury on the law applicable to principals.

**4.—Same—Misdemeanor—Charge of Court.**

Where the value of the alleged stolen property was shown to have been more than fifty dollars, there was no error in the court's failure to charge on misdemeanor theft.

**5.—Same—Evidence—Burglary—Theft.**

Upon trial of theft, there was no error in admitting evidence of the burglary at the time of the theft, and failing to limit such testimony, as they were two separate offenses.

**6.—Same—Original Taking—Charge of Court.**

Where, upon trial of theft, the evidence showed that the alleged stolen property was taken out of a car on a train and thrown on the right of way, and that the defendant and others were afterward seen loading this property on a wagon, the court correctly instructed the jury that they could not convict defendant unless he was present at the original taking.

**7.—Same—Charge of Court—Alibi—Circumstantial Evidence.**

Where, upon trial of theft, the evidence was circumstantial, and also raised the issue of alibi, the court correctly instructed both of these issues, in connection with the original taking.

**8.—Same—Charge of Court—Amending Charge.**

Where, upon trial of theft, the amendment to the special charge would authorize the jury to convict defendant though they did not believe he was connected with the original taking, the same was reversible error.

**9.—Same—Charge of Court—Property Found.**

Where, upon trial of theft, there was nothing in the evidence to justify the submission of the amendment to the special charge based upon accidental loss and finding of the property, the same was error.

**10.—Same—Misdemeanor Theft—Charge of Court.**

Where the court erroneously instructed the jury that possession of the stolen property after the original taking constituted theft, and the State claimed that if the defendant found the property after the original taking and fraudulently appropriated the same, the error in the court's charge would thereby be cured, but the evidence further showed that in that event the offense would be a misdemeanor upon which the court had failed to charge, there was still reversible error.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of theft; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*E. T. Branch* and *Brockman, Kahn & Williams,* for appellant.—On the question of the court's charge on alibi: Bradshaw v. State, 44 Texas Crim. Rep., 222, 70 S. W. Rep., 216.

*C. E. Lane,* Assistant Attorney-General, for the State.—On the question of the court's charge, taken in connection with lost property: Martin v. State, 44 Texas Crim. Rep., 538; Reed v. State, 8 Texas Crim. App., 41; Rhodes v. State, 11 id., 563; Trimble v. State, 33 Texas Crim. Rep., 397; King v. State, 43 Texas, 351.

HARPER, Judge.—Appellant was tried, charged with theft of property over fifty dollars in value, and when convicted was sentenced to three years confinement in the penitentiary.

1. Appellant was also indicted, charged with burglary, growing out of the same transaction, had been tried, and adjudged not guilty of burglary, and he filed a plea setting up these facts, alleging former jeopardy. The court overruled this plea and appellant excepted to

this action of the trial court, and assigns this as error in this court. The court did not err in overruling and striking out this plea, as our Penal Code provides that the offenses of burglary and theft, although growing out of the same transaction, constitute two separate and distinct offenses. It has been held by this court that the common law rule, merging burglary and theft committed contemporaneously, and making conviction of one bar prosecution for the other, is abrogated in this State, and that under separate indictments conviction can be had for either or both. This question is fully discussed in an opinion by Presiding Judge Davidson, in the case of Loakman v. State, 32 Texas Crim. Rep., 563, and this decision has been adhered to in this State since then. See also Adams v. State, 62 S. W. Rep., 1059. The entry is one offense under our law, and other offenses committed subsequent to the entry may be prosecuted as another and separate offense.

2. The indictment in this case alleges the theft of ninety-two buckets of lard of the value of $73.90, a better description of which is to the grand jury unknown. The defendant insists that the indictment alleging the theft of "lard," proof that a lard compound, made of "cotton-seed oil and oleo stearine" does not support the allegation. That lard as defined by Webster and other authorities means a product of the hog, and does not embrace a product made of cotton-seed oil and beef fat or oleo stearine.

H. F. Bender, a witness for the State, testified that he was an employe of the company manufacturing this product. He says: "It is lard or lard compound. I call it lard compound; everybody that talks about it calls it lard; if they went into the store to buy it they called it lard; it is used for the same purposes that lard is used for; it is commonly known as lard." On cross-examination it was shown that this witness lived in New Orleans, and he was speaking of the matter as it related to that city.

J. C. Vickers, a witness for the State, called the product lard, and said he knew of his own knowledge that it was lard. R. L. Martin testified, and called it lard, and when questioned said it was Snowdrift lard compound.

Capt. H. F. Sisk testified and said, in speaking of this compound, that he found fourteen cases of lard. "Those buckets contained lard. There were some of the tops of the buckets that had been broken off and the lard had spilt out. That stuff is called lard. I do not know whether it is hog lard or not. This seemed to be a first-class grade of nice, white lard. I would call it lard. I never had any other name for it. This stuff cooked like lard and felt like lard. My wife orders lard whenever she orders it, and we cook with it."

Gus Boehmert testified and called it lard, and said he had bought some of that lard in Houston. The defendant introduced Prof. P. S. Tilson, who testified that the compound alleged to have been stolen was made of cotton-seed oil and stearine or beef fat. Beef fat

is commonly called tallow. The merchant can call this "compound lard" without violating the pure food law. The word "lard" as used in the pure food law pertains to the product from hog fat only.

. The proof makes it clear that the compound alleged to have been stolen was not hog lard, nor "lard" as defined by the dictionaries or the pure food law, and defendant objected to all the above testimony, and insists that the proof does not sustain the allegation that *lard* was stolen, but that the proof makes it clear that it was not lard, but a compound composed of cotton-seed oil and beef fat, consequently the proof does not sustain the allegation, and the court erred in admitting the testimony, and in not giving the special charges instructing a verdict of not guilty. The court instructed the jury: "In determining whether or not the property taken (if taken) was lard, you are instructed that if said property had the appearance of the product of the hog, known as lard, and was called, used as, for and as a substitute for said hog product known as lard, then in law it is lard." This charge is assigned as error, and defendant asked charges presenting the contrary theory, that if in fact it was not the product of the hog known as lard to acquit.

In the case of Glover v. State, 22 Fla., 499, it is held: "In an indictment for larceny the article charged to have been stolen should be sufficiently described so that there may be no doubt about its identity. This is required for the protection of the accused, so that in the event of a future prosecution for the same offense there may be no doubt of the identity of the article so alleged to have been stolen. The evidence must also substantially correspond with the description in the indictment. *Such articles may be described by the name by which they are generally known,* and this watch having all the outward appearance of being gold was described and known by all the parties and witnesses in this case as such, save only a jeweler, who, after a close and careful examination, pronounced it a filled watch." See also Pfister v. State, 84 Ala., 432; State v. Clark, 8 Ire., 226; State v. Campbell, 76 N. C., 261; State v. Sansom, 3 Brev., 5; State v. Snow, 11 L. R. A., 355.

In this case the compound had the appearance of hog lard; was known and called by all the parties and witnesses as lard, and was used for the same purposes as hog lard. It is true that experts say it is a lard compound, and that its ingredients are cotton-seed oil and oleo stearine, and was not made from the fat of the hog, but the evidence shows it was commonly called lard in Texas, and also in Louisiana, where it is made, and the court did not err in admitting the evidence.

In an early day in Texas, in the case of Dignowitty v. State, 22 Texas, 531, Chief Justice Wheeler said: "Particular description of the articles stolen are not therefore held to be necessary; if it is described specifically by the name usually applied to it, that will be sufficient." In this case it was described by the name usually applied

to it, if we are to be governed by the evidence in this case, and this has always been the rule in this State, and especially is this true since the adoption of article 448 of the Code of Criminal Procedure: "An indictment for any offense against the penal laws of this State shall be declared sufficient which charges the commission of the offense in ordinary and concise language in such manner as to enable a person of common understanding to know what is meant and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged." See also article 446, and Green v. State, 28 Texas Crim. App., 493.

3. The appellant complains that the court erred in charging the law applicable to principals—not that there is any error in the charge in itself, but that the evidence did not call for a charge on this issue. The indictment charges appellant with theft of certain property which was thrown from a railroad car on the right of way, and which subsequently defendant, with another, was caught in the act of loading in a wagon. If the offense for which he was being tried was the taking of the property at the time he was loading it on the wagon, perhaps the court would have been in error in thus charging the jury, but the theft was committed when the property was taken from the car, and if the facts and circumstances in evidence connected the defendant with the original taking from the car, whether he in person took it from the car, or it was taken by another with whom he was acting, he would be a principal. The evidence for the State shows that defendant was in the town of Crosby on the night of the theft, a town about eighteen miles east of Houston; that at this town someone opened the car in which the property afterwards stolen was situated, and when the train was within about six miles of Houston the property was thrown from this car, and in about two hours defendant came from the direction of Houston to the point where the property had been thrown off, and commenced to gather it and place it in the wagon, when he was arrested. Defendant by his testimony would place himself in Houston at the time the property was thrown from the car. We think the court properly submitted the issue of principals in this case, for if from the circumstances that the defendant (by the State's evidence) was in Crosby; that the car was there opened, and that subsequent to the time it was thrown from the train and defendant thereafter came in a wagon to the place where it had been thrown off and commenced to place it in a wagon, the jury would be authorized to find defendant guilty as a principal, even though he was not the person who actually threw the property from the train. It is true that in order to constitute one a principal in the crime of theft, it devolves upon the State to show his complicity in the original taking, but this may be done by circumstantial evidence as well as by positive testimony, and if the jury should believe from the circumstances in the case that defendant was in Crosby, and in pursuance of a common design he was the per-

son who opened the car from which the property was subsequently stolen, and that in pursuance of the plan, he went to Houston, got a wagon and returned to the place where the property was thrown, and was gathering it up, they would be authorized if they so found to return a verdict of guilty, even though he was not the person who actually threw the property from the car.

4. Neither do we think the court erred in failing to charge on misdemeanor theft. The value of the property taken from the car was by all the evidence shown to have been more than fifty dollars. The fact that the amount loaded by defendant in his wagon at the time of his arrest might have been less than fifty dollars, would not raise the issue of misdemeanor theft. For if defendant was not connected by circumstances or otherwise with the original taking, as principal or otherwise, the going to the place and loading it on his wagon, would not render him guilty of theft, for it is evident from the evidence he was doing so with the consent of the person who took it from the car, whether he was the one who took it from the car or some other person, but the facts under our law might make him an accessory to the crime, or under certain conditions might make him guilty of receiving or concealing property, knowing the same to have been stolen. However, under an indictment for theft he could not be convicted of either of these offenses, but must be prosecuted under an indictment charging him with such an offense. The evidence in this case would indicate that defendant was either a principal in the original taking, or that the person taking same reported that fact to him, and he went at the instance of such person to move it to another place, and if the latter be true, he would not be guilty of theft, and the court did not err in refusing to submit a charge on misdemeanor theft. The evidence would not authorize a conclusion that he was doing so without the consent of the person who took it from the car.

5. Neither did the court err in refusing the request of appellant to instruct the jury that they, in determining the guilt or innocence of defendant, could not consider for any purpose the question of whether or not the defendant broke and entered the car from which the property was stolen. It is true, as shown by the plea, that defendant had been acquitted of the offense of burglary, but, as under our statute, the two offenses do not merge, and the defendant can be convicted both of the offense of burglary and of the theft committed at the same time, an acquittal of the offense of burglary does not acquit one of the offense of theft, and if subsequent to the trial for burglary, the State should discover additional testimony showing clearly that a defendant was the person who broke and entered the house and committed the crime, under a prosecution for theft this evidence would be admissible and the effect of it should not be limited. Appellant could not be prosecuted the second time for burglary, but any evidence which would tend to show that defendant was guilty

of theft should be admitted, even though it should develop that defendant was really guilty of burglary. The verdict and judgment in that case have no bearing whatever in a case in which he is being prosecuted for theft.

6. The court in this case correctly submitted the case on the theory that defendant must have been connected with the original taking from the possession of the conductor of the train (special ownership having been alleged in him), and if he was not so connected he should be acquitted. The defendant's testimony would show that he was in Houston at the time of this theft, and the court charged the jury that: "Among other defenses set up by the defendant is an alibi; that is, that if the offense is committed, as alleged, then the defendant was, at the time of the commission thereof, at another and different place from that which such offense was committed, and therefore was not and could not have been the person who committed the same. Now, if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the offense was committed at the time of the commission thereof, you will find the defendant 'not guilty.'"

This presented his defense as made by the testimony, and as the State's evidence would indicate by circumstances that defendant was the person who took the property from the train, or was acting with the person who did do so in such a way as to be a principal in law, the jury would be authorized to find defendant guilty, especially as the court submitted the case on circumstantial evidence, charging the jury as follows:

"In order to warrant a conviction upon circumstantial evidence each fact necessary to establish the defendant's guilt must be proved by the evidence to the satisfaction of the jury beyond a reasonable doubt; all such facts must be consistent with each other and with the defendant's guilt, and all the circumstances taken together must be of a conclusive nature leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the defendant committed the offense charged, and must exclude every other reasonable hypothesis except that of the defendant's guilt."

7. It follows that the case should be affirmed, unless an error was committed by the court in giving special charge No. 3 as amended by the court. The defendant requested the court to instruct the jury: "You are instructed at the request of the defendant that if, from the testimony in this case, you believe that some other person and not the defendant in this case threw said buckets of lard alleged to have been stolen from said car, then though you may believe beyond a reasonable doubt that the defendant either by himself or with other person or persons took said buckets and their contents from the railroad right of way, this would not constitute theft as alleged in the indictment, and you will find the defendant not guilty," which is endorsed as follows: "Given with this addition: 'Unless you believe

from the evidence that the defendant or the defendant in connection with another, took possession of the property, with the intent at the time of taking possession, of defrauding the owner and appropriating same to his own use.' "

This addition to the charge would seem to authorize the jury to convict the defendant under this indictment if, after the property was thrown from the train, even though he was in no way connected with the original taking, if he took possession of the property with the intent to deprive the owner of the value of it. As we read the evidence in this case, such acts would not render him guilty of theft in this case, for, as hereinbefore stated, the evidence indicates one or two conclusions: First, that the defendant either took the property from the car, or was acting with such person in such way as to be a principal in law, or, second, that some other person threw the property from the car, and immediately upon arrival in Houston, told the defendant of the theft, and defendant with the knowledge and consent of such person went to get the property thus stolen. If the latter is the correct theory, the defendant would not be guilty of theft, and could not be convicted under this indictment, and one of the other theories is the only one that can be drawn from the evidence, for that the defendant had knowledge where the stolen property was situate is beyond dispute, for, a dark night he drives to the point six miles out of Houston, where the property has been placed and commences to load it on his wagon. The charge as requested by defendant is not the law of this case, for under the circumstances the jury would be authorized to find defendant a principal offender, even though he was not the person who threw it from the car, and if the court had given the charge, amending it so as to make it clear that same did not apply if the jury, under the main charge, believed the defendant was a principal as herein defined, the case would have been correctly presented.

As this amendment to the charge, when read in connection with the special charge given, would authorize the jury to convict, even though they did not believe he was connected with the original taking in any way, if he took possession of the property, it was in effect a peremptory instruction to find him guilty, as there was no question under the evidence but that he took possession of the property and placed a part of it in his wagon. Upon another trial we trust that the charge will be so drawn as to present clearly that under this indictment the defendant must be connected in some way with the original taking as a principal. This proof can be made by circumstances, and the court in his main charge presented the case on this theory, and if the special charge, with the amendment had not been given, no reversible error would have been presented. However, on another trial we would suggest that the charge more aptly present the theory, that defendant must be connected with the original taking by circumstances or otherwise. The circumstance of his

going direct to the property on the right of way and loading it on his wagon, is a cogent circumstance tending to make him a principal, and with the other facts and circumstances might authorize a jury to so find, but for the error in the modification of the special charge wherein the jury was authorized to convict if they found he took possession of it with the intent to deprive the owner of it, after it had been stolen, this case should be reversed.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

January 24, 1912.

HARPER, JUDGE.—On a former day of this term this case was reversed and remanded, and the State had filed a motion for a rehearing, and in the motion insists that the modification by the court of the special charge requested by appellant was a correct presentation of the law, if appellant *found* the property, and at the time he assumed possession he intended to appropriate it to his own use. The authorities cited by the State correctly present the law on this state of facts, but does the evidence suggest even in the remotest degree an accidental loss of the property by anyone, and an accidental finding of the property by appellant? If so, then the authorities cited by the State on its motion for a rehearing would be applicable, otherwise they have no bearing on the case. The State endeavored to show by facts and circumstances that appellant was in the town of Crosby when the freight train arrived in that town, twenty miles east of Houston; that the car in which the property was situate was opened at that point; that between Crosby and Houston, at a point about six miles east of Houston, about twelve cases of lard, or lard compound, were taken out of this car and dumped on the right of way; that in about two hours from this time appellant came driving from the direction of Houston to the point where the packages were on the right of way and commenced to load the boxes of lard in a wagon; that the moon was down, and yet appellant went direct to the place where the lard was on the right of way and commenced to gather it up, when he was arrested. There is nothing in this evidence to suggest accidental loss and accidental finding of the property, and the law applicable to such a state of case should not have been submitted to the jury, because there was no basis in the evidence upon which to predicate such a charge. Again, if it should be conceded that there is a faint trace of evidence upon which to predicate such a charge, then the evidence shows that appellant had placed in the wagon but five cases of lard; that the officers arresting him had him place therein five additional cases of lard; that these ten cases of lard were only of the value of $73.90. There was a question in the evidence, if appellant had no connection

with taking the lard from the car, as principal or otherwise, as to whether, at the time of his arrest, he had taken possession of more than five cases of lard, which would have been of value less than $50. Appellant requested the court to submit the issue of misdemeanor theft, and complains in his motion for a new trial of the failure of the court to do so. If the issue was to be submitted to the jury that appellant had found lost property, and by appropriating it to his own use, was guilty of theft, then the issue was made by the evidence whether or not he had reduced to possession and appropriated property of the value of fifty dollars or over, and an appropriate charge on misdemeanor theft should have been given, as well as felony theft. And if this issue is in the case (which we do not think the evidence justifies) the failure to submit the issue of misdemeanor theft would result in a reversal of the case, for the evidence does not make it clear whether or not the amount of property he had taken possession of amounted to fifty dollars in value.

The motion for rehearing is overruled.

*Overruled.*