RAYMOND ALLISON V. THE STATE.

No. 7000.    Decided June 29, 1923.

Rehearing denied June 25, 1924.

1.—Receiving and Concealing Stolen Property—Sufficiency of the Evidence.

Where, upon trial of receiving and concealing stolen property, the evidence is sufficient to sustain the conviction, there is no reversible error.

2.—Same—Evidence—Finding Stolen Property—Hearsay.

Upon trial of receiving and concealing stolen property, there was no error in admitting testimony of the finding of the alleged stolen property, and that a certain party was present when witness found same, there was no error, the record failing to disclose any statement made to the State's witness by the person who was present.

3.—Same—Evidence—Finding Stolen Property—Identification.

Upon trial of receiving and concealing stolen property, there was no error in admitting testimony of the owner as to facts relating to the finding the store burglarized, the loss of property, and its recovery and identification.

4.—Same—Evidence—Bill of Exceptions.

Where the trial court qualified the bill of exceptions by stating that appellant had shown that subsequent to the trial of one Mike Nichols, appellant's brother, Earl Allison, had been indicted for receiving and concealing stolen property and that he had not been arrested, there was, therefore, no error in asking the wife of Earl Allison if she knew whether her husband was a witness in the case against Mike Nichols, which she answered in the affirmative.

5.—Same—Co-Defendant—Evidence—Indictment.

There was no error in proving the indictment against Earl Allison, defendant's brother, for receiving and concealing the same property for which defendant was on trial, and also the flight of said brother; besides, like testimony had been already introduced.

6.—Same—Verdict—Amending Verdict—Practice in Trial Court.

Where the verdict of the jury as originally returned found defendant guilty of possessing and concealing stolen property, and without resubmitting the matter to the jury the trial court permitted the county attorney to change the verdict so that the word "receiving" was inserted therein, instead of the word "possessing" there was no reversible error.

7.—Same—Charge of Court—Limiting Testimony—Injury to Defendant.

Where, upon trial of receiving and concealing stolen property, the charge of the court on limiting the testimony by certain witnesses, although apparently favorable to the defendant injuriously affected his rights, and the requested charge obviated this objection but was refused by the court, and the main charge authorized the jury to consider against appellant evidence which could not be appropriated to that purpose in the absence of his knowledge, the same is reversible error.

8.—Same—Rehearing—Practice on Appeal.

Where this court after considering the record and the authorities cited by the district attorney in his motion for rehearing, it is constrained to regard the opinion of the court heretofore written as making the proper disposition of the case.

Appeal from the District Court of Milam. Tried below before the Honorable John Watson.

Appeal from a conviction of receiving and concealing stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*R. Lyles* and *Robt. M. Lyles,* for appellant.

*Tom Garrard,* Attorney for the State, and *Grover C. Morris,* Assistant Attorney for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Milam County of receiving and concealing stolen property of the value of more than fifty dollars, and his punishment ·fixed at two years in the penitentiary.

The indictment contained three counts, one charging theft of said property, another the receiving of said property from Bryant Walker and Mike Nichols and 'concealing same, and the other charging the receiving of said property from some person to the grand jurors unknown. The trial court submitted only the second count. Appellant's contentions appear in ten bills of exception which we consider in the order same appear in appellant's brief.

It is urged that the evidence does not support the verdict. Without detailing the testimony of individual witnesses it appears from the testimony of the State that on Tuesday night December 14, 1920, the store of the Thorndale Mercantile Company was burglarized and property exceeding one thousand dollars in value taken therefrom. The back door of said store opened upon an alley and said door was broken. A witness who knew Bryant Walker and Mike Nichols swore that he saw them in Thorndale Tuesday afternoon before the burglary; that they were in a green Essex touring car and were accompanied by another man unknown to witness. Witness did not know appellant. Another witness testified that on the same afternoon he saw Mike Nichols, Bryant Walker and another man whom he did not know drive into the alley which ran behind the Thorndale Mercantile Company's store. Another witness testified that between one and two o'clock that night he saw a green Essex car in Thorndale going out toward Cameron on the Cameron road. The next day after said burglary appellant, Mike Nichols and Bryant Walker drove a green Essex touring car to Taylor, in Williamson county, and from

there by Thrall and on to Cameron. They met a Miss Hawes at Taylor and carried her to Cameron where the party spent the night of Wednesday the 15th. The next morning said party drove out to the home of appellant's brother with whom he made a crop during the year 1920, and in the room which had been occupied by appellant Miss Hawes testified there were five suit cases up over some matting resting on the rafters. The suit cases were brought down, opened and large quantities of men's and women's clothes appeared. Bryant Walker gave Miss Hawes a coat and himself put on a shirt coming out of said suit cases, and Miss Hawes said she saw appellant trying on a pair of new shoes and saw Mike Nichols trying on a hat. From this place the party went back to Cameron and from Camerson to Rogers in said green Essex touring car. After spending the night in Rogers Miss Hawes went back to her home in San Marcos. The next appearance of appellant in this record is when he was arrested in Oklahoma in the early part of the week following the burglary. He was in company with Mike Nichols and they had the green Essex touring car with them. On Monday of said week the officers found in a sand bank about 100 or 150 yards from the house where Miss Hawes testified she saw the five suit cases above mentioned, five suit cases and a bundle containing overcoats. This property was afterwards identified by the owners of the burglarized store as being their property and that which was taken the night of the burglary. The coat given to Miss Hawes was also identified as part of the stolen property. When appellant was arrested in Oklahoma he had on a pair of new Edwin Clapp No. 7 brown shoes. Said shoes were produced in court upon his trial and there examined by the clerks and proprietors of the burglarized store. These people testified that they handled the Edwin Clapp shoe, and one of them said that on the afternoon before the burglary he showed a pair of brown Edwin Clapp shoes No. 7, having the same width and last as the pair taken off the feet of appellant when arrested and that the shoes were taken on the night of the burglary. Said witness further stated that in their shoes the name "Thorndale Mercantile Company" was written or stencilled and that the shoes contained the stock number. At a place in the pair of shoes taken from the feet of appellant, corresponding with the place in which the words "Thorndale Mercantile Company" were placed by the owners of said store, was found where with a knife or other sharp instrument a name had been erased. The stock number of the pair of shoes found upon appellant had also been erased with ink or indelible pencil. We have stated this much of the testimony in order that it may be understood why we find ourselves unable to agree with appellant's contention that the evidence does not support the jury's verdict finding the appellant guilty in this case. He did not take the stand and testify. His defense appears to have been an alibi, and two witnesses testified that they saw him in Cameron and

carried him with them from Cameron to Rogers on the night of the
14th of December, 1920. On cross-examination these witnesses ad-
mitted that their attention to this date was in nowise fixed or attracted
until after appellant had been arrested and after he made bond and
came to each of them and reminded them of the date. The wife of
appellant's brother at whose house he had been living and near whose
house the stolen property was found buried, by the officers, testified
that her husband was at home all during the night of December 14th.
In addition to the above testimony a grip belonging to appellant and
containing letters addressed to him and some of his clothes, was
found by the officers at the house of his brother on the occasion of
their visit and the finding of the buried and stolen property.

By a bill of exceptions appellant complains that officer Blaylock
was allowed to give testimony of the finding of the alleged stolen
property and to relate things told him by Earl Allison in the absence
of the accused. An examination of bills of exception Nos. 8 and 9
setting forth appellant's contention in this regard fails to disclose
any statements made to the officer by Earl Allison. In our opinion
it was permissible for the sheriff to tell of the finding of the stolen
property, its location and condition when found, and that Earl Alli-
son was present when he found same. The fact that appellant was not
present in no way affects the admissibility of such evidence.

In the main charge the court gave the following instruction:

"In this case the witnesses John Worley, L. L. Blaylock, Gus Newton,
Bill Meredith, Rufus Milligan and Cal Gregory have testified to cer-
tain facts indicating the presence of Mike Nichols and B. W. Walker
in the town of Thorndale on the afternoon preceding the night of
the alleged theft and at times, places and under circumstances when
the defendant was not shown to have been present, and to the flight
of said B. W. Walker and Mike Nichols.

"Now this testimony was permitted for the purpose of enabling you
to determine whether or not the property described in the indictment
was acquired by the said B. W. Walker and Mike Nichols under such
circumstances as that the acquisition thereof comes within the mean-
ing of the term theft, and as to whether or not the said defendant,
Raymond Allison, knowing it to have been so acquired, received said
property from the said B. W. Walker and Mike Nichols, and if you
consider such testimony at all, you will consider it for no other pur-
pose than that herein mentioned."

The giving of this charge was an error against the State. There
was nothing in the testimony of any of the witnesses named which
should have been limited in the charge. The testimony of the owners
of stolen property to the fact of the loss and recovery and identifica-
tion thereof in most cases will be a narration of facts and acts tran-
spiring out of the presence of the taker of the goods or the breaker of
the house, but such evidence needs no limitation in the charge. The

testimony of witnesses to the finding of stolen property and a description of its condition and location when found, and of its return to the owner, though this be a narration of things transpiring in the absence of the alleged thief, needs no limitation in the charge. The effect of such evidence is to prove issuable facts. This court has always held that any testimony legitimately showing the theft of the property by those from whom the illegal receiving is alleged in a case such as the one before us, would be admissible against the receiver upon his trial, and when there is such evidence as the confession of the alleged thief or record testimony of his conviction, we have held it proper to limit the purpose of such evidence as affecting only the question of the alleged theft. The injury of a failure to so instruct the jury would be questionable unless something appear in such evidence which might have reasonably been given an effect beyond mere proof of the guilt of the original taker. In Tucker v. State, 23 Texas Crim. App., 518, where a self-incriminating statement made by the alleged taker of the stolen animal was introduced against the receiver, and the effect of the introduction of such evidence was not limited in the charge, Judge Willson said:

"But the defendant complains that the charge of the court does not sufficiently limit and restrict the purpose for which this testimony might be considered by the jury. He contends that the jury should have been further told that they could only consider it in determining whether Noon Tucker was guilty of the theft of the yearling and could not consider it as any proof that defendant fraudulently received said yearling, knowing that Noon Tucker had stolen it. It would have been proper for the court to have so instructed the jury, perhaps, but the omission to do so was not excepted to by defendant, or in any manner called to the attention of the court at the time of the trial, as far as is disclosed by the record, and we do not think the error, if error it was, could have operated to the prejudice of defendant, as said testimony did not even in a remote degree tend to show that defendant had fraudulently received the yearling, knowing the same to be stolen property. Said testimony only bore upon the issue of Noon Tucker's guilt of the theft, and for this purpose it was clearly admissible."

See Cooper v. State, 29 Texas Crim. App., 18. It being the usual rule that the acts and declarations of third parties cannot be invoked as binding one not present or connected in some way with such acts or declarations, the reason for a limitation of such acts and declarations when they relate only to the guilt of the taker, is apparent. But when the testimony relates to those acts which are but the development of the transaction making out the offense charged, such as testimony of the loss of the property, or the burglary of the house, and the finding of the property, and its return to the owner and his identification of it; and as applicable to the instant case, the

seeing of the alleged takers in the neighborhood of the burglarized house about the time of the burglary, they being accompanied by another person who might easily be the accused in this case, it needs no limitation. We have concluded that the charge above quoted and under discussion was erroneous, but as said by Judge Willson in Tucker v. State, supra, "We do not think the error could have operated to the prejudice of the defendant." We are forbidden by Article 743 of our Code of Criminal Procedure to reverse cases for errors in the charge unless the error was calculated to injure the rights of the accused or prevent his having a fair and impartial trial. If it was error to group the witnesses in said charge and attribute to them testimony which they did not give, we observe there was no exception presented to the court calling his attention specifically to such error, and appellant's special charge No. 2 made the same grouping of the witnesses and attributed to them the same testimony as contained in that portion of the main charge above quoted. There was no exception directed to any part of said charge as being on the weight of the testimony. Complaint is directed at this for the first time upon appeal. The failure to take such exception deprives the accused of the right to complain here. Reggitno v. State, 96 Texas Crim. Rep., 477; Pollard v. State, 58 Texas Crim. Rep., 299; Thompson v. State, 57 Texas Crim. Rep., 437, 124 S. W. Rep., 659; Williams v. State, 22 Texas Crim. App., 497.

Appellant's bills of exceptions Nos. 2, 3, 7, 8 and 9 set forth his objections to the testimony of the owner of the store and his clerk testifying to facts relating to their finding the store burglarized and the loss of the property, and its recovery and identification; also to the finding of said property by the sheriff, and its condition and its return to the owner. We have already indicated our view that appellant's objection to this as being evidence of acts transpiring in the absence of the accused, would not be sound, and the bills present no error.

By his bill of exceptions No. 10 appellant complains of a question propounded to the wife of Earl Allison, appellant's brother, while testifying for the State. The question asked her was if she knew whether her husband was a witness in the case against Mike Nichols, to which the witness answered that he was here as a witness. The objection to this was that it was irrelevant and immaterial and prejudicial to this defendant. The trial court qualifies the bill of exceptions by stating that appellant had shown that subsequent to the trial of Mike Nichols appellant's brother Earl Allison had been indicted for receiving and concealing stolen property and that he had not been arrested. We fail to see the injury to the appellant in the matter complained of.

Appellant's bill of exceptions No. 11 presents the same matter in a little different way. The district clerk was testifying as a witness

for the defense and stated that Earl Allison was present as a witness for the State and testified upon the trial of Mike Nichols, and that appellant's case was set for trial immediately following that of Mike Nichols, and that when appellant's case was reached Earl Allison, though summoned as a witness, failed to appear and that attachment was issued for him and returned showing that he could not be found. This bill is also qualified by the trial court stating that appellant had already had said witness to testify that after the trial of Mike Nichols Earl Allison was indicted himself and to say that his arrest had not been effected. As we view this evidence it was favorable to appellant. If we understand his purpose in proving the indictment of Earl Allison for receiving and concealing the same property, for the receiving and concealing of which appellant was on trial, the proof of Earl Allison's flight would be a circumstance tending to show his guilt and to that extent would lend color to the proposition that Earl Allison was the receiver and the one who had concealed said property and not this appellant.

Appellant also complains that the verdict of the jury as originally returned into court found him guilty of possessing and concealing stolen property, and that without resubmitting the matter to the jury or sending them back for a consideration further, the trial court permitted the county attorney to change said verdict so that the word "receiving" was inserted therein instead of the word "possessing." The bill of exceptions is qualified by the statement that after the verdict was so changed it was again read by the district clerk and the court asked each juror if he consented to the change and if the verdict as read was his, and each answered affirmatively. Art. 773 of our C. C. P. provides for the correcting of verdicts. Many authorities are cited by Mr. Vernon in his Annotated C. C. P., 582-583, holding that verdicts may be corrected in matters as vital as the correction made in the instant case.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

June 24, 1923.

HAWKINS, Judge.—The correctness of our opinion in holding the charge set out therein erroneous but harmless is assailed. We again copy the charge, italicising that portion criticised.

"In this case the witnesses, John Worley, L. L. Blaylock, Gus Newton, Bill Meredith, Rufus Milligan and Cal Gregory, have testified to certain facts indicating the presence of Mike Nichols and B. W. Walker in the town of Thorndale on the afternoon preceding

the night of the alleged theft and at times, places and under circumstances when the defendant was not shown to have been present, and to the flight of said B. W. Walker and Mike Nichols.

"Now this testimony was permitted for the purpose of enabling you to determine whether or not the property described in the indictment was acquired by the said B. W. Walker and Mike Nichols under such circumstances as that the acquisition thereof comes within the meaning of the term theft, *and as to whether or not the said defendant, Raymond Allison, knowing it to have been so acquired, received said property from the said B. W. Walker and Mike Nichols, and if you consider such testimony at all, you will consider it for no other purpose than that herein mentioned.*"

Whether proper or not to limit the testimony of the witnesses named it would affect appellant's right if the limitation given was injurious to him. The charge condensed and paraphrased means, "Certain witnesses (naming them) have testified to facts which are not shown to have been known to Allison; although he may not have been aware of these circumstances you may consider them in determining whether he knew the property had been stolen, and received it with such knowledge; you may also consider it in determining whether Walker and Nichols stole it."

Counsel for appellant directly called the court's attention to the error in the portion of the charge italicised by the following objection filed at the proper time.

"Defendant objects and excepts to that portion and paragraph of the court's main charge wherein the court attempts to limit the testimony of the witnesses Blaylock, Worley, Newton, Meredith, Milligan and Gregory for the reason that the same expressly authorized the jury to consider evidence transpiring in the absence of the defendant and of which no knowledge has been brought home to him and by which he was in no wise bound in passing upon whether or not defendant knew the property alleged to have been received and concealed by him had been acquired under such circumstances as that the acquisition thereof comes within the meaning of the term theft. Defendant tenders his special Charge No. 2, in conformity herewith."

The special charge referred to in the objection was a copy of the charge given by the court, but omitting the italicised portion. Thus in two ways was the court's attention directed to the particular part of the charge considered by appellant as objectionable. The special charge requested, following the specific objection, amounted to nothing more than saying to the court, we make no protest against the first portion of your charge, but believe the latter part should be omitted. Upon reconsideration we have reached the conclusion that we were in error in holding the charge harmless. It authorized the jury to consider against appellant evidence which could not be appropriated to that purpose in the absence of his knowledge. To what extent the

jury may have availed themselves of the privilege thus extended is impossible for us to know.

The error calls for granting the motion for rehearing, which is ordered; the judgment of affirmance is set aside, and the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

ON REHEARING.

June 25, 1924.

MORROW, Presiding Judge.—The District Attorney, in an argument showing thought and research, has filed a motion for rehearing. With it before us, we have considered the record and the authorities cited, and are constrained to regard the opinion heretofore written as making the proper disposition of the case.

The motion is overruled.

*Overruled.*