## FRED HOLMES v. THE STATE.

No. 16723.   Delivered May 16, 1934.
Rehearing Denied June 27, 1934.

The opinion states the case.

*Bert Edw. Derden,* of Wichita Falls, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for receiving and concealing stolen property; punishment, two years in the penitentiary.

This appellant was charged with frauduently receiving and concealing five controller blow out coils of the value of $9.00 each; five controller blow out coils of the value of $6.00 each, and ten controller cylinder drums of the value of $10.00 each, which

had been stolen by some person whose name was unknown to the grand jury. The facts showed that 22 street cars had been retired from service and put in the street car company's yard in Wichita Falls, Texas. The control boxes had been removed from same. Only a part of the property thus taken was recovered, and as far as we understand this record, appellant is charged with receiving and concealing the part which was so recovered.

If we understand the record, these control boxes contained, among other contents, controller blow out coils and drums. The coils were of two types, the replacement value of one type being $6.00 each, and the other $9.00 each. The replacement value of the drums was $10.00 each. Without undertaking to account for the others, or to charge appellant with the theft of same, or the receiving and concealment of same, the State introduced proof that appellant was found in possession of five of each type of coils and ten of the drums of the aggregate replacement value of $175.00. It was in testimony that this amounted to about one-fourth of the equipment stolen. At this point we state that it was in testimony that the grand jury tried to find out from whom appellant had received said property, but without success. It was further shown in testimony that the coils and drums found in appellant's possession at a junk shop in Wichita Falls were repossessed by employes of the street car company and returned to its possession.

Ten bills of exception are in the record. Bills 1, 2 and 3 present objections to the testimony of State witness Bogue as to the value of the alleged stolen property. Bill No. 1 is defective in that nothing therein stated as appellant's grounds of objection, is in anywise certified to be true in fact, and it is apparent that the witness was but undertaking to narrate certain steps used by him in arriving at the cash market value or replacement value of the property in question. This same is true of appellant's second bill of exceptions in which as part of his reason for attributing certain cash market values or replacement values to indicated parts, the witness first stated the list price of said articles, and was interrupted by an objection, after he had made the answer. We note that no objection was made to the question, and that after the answer was given no request was made that same be withdrawn or stricken from the record, which would have been the proper procedure if the answer be deemed not responsive.

Bill No. 3 contains some three pages of questions and answers, certified by the court as necessary to be set out in this

form in order to make clear the objections. After the witness, whose testimony was objected to, had referred to what he called a list price, appellant objected and the question was not answered, but another question in different form was asked. No objection was then made until after said witness stated that the cash market replacement value of five of the blow out coils recovered was $9.00 each. At this juncture appellant moved to strike out the testimony as to such replacement values because based on hearsay, secured from a catalogue not proven to be authentic and that a correct price is therein, and because the catalogue was the best evidence. The court refused the motion. In Brown v. State, 162 S. W., 339, quoting from Wharton on Crim. Ev., appears the statement that where value is in issue, hearsay is primary and indeed the best evidence, and in proving value it is always admissible to resort to hearsay. It was shown by testimony in the record that there was no market for such property as formed the subject of the theft under investigation, in Wichita Falls, Texas, hence it was proper to prove its replacement value. Martinez v. State, 16 Texas App., 122, the holding in which is approved in Clark v. State, 23 Texas App., 613; Keipp v. State, 51 Texas Crim. Rep., 419; Close v. State, 55 Texas Crim. Rep., 382, and Roberts v. State, 61 Texas Crim. Rep., 434. The witness whose testimony forms the subject of this objection had been with the traction company for many years, and was familiar with that part of their business requiring purchases for replacements for such parts of street cars as here involved. He said the company bought such parts at 40 per cent off list price, and that this would make such blow out coils cost the company new $19.00 each; also that when estimating the second-hand market value or the replacement value, he cut the above price in half, and testified that the cash market replacement value of the coils was $9.00 each or $45.00 for the five. In this connection we might observe that this witness testified, without objection apparently, that the cash market replacement value of the drums was $10.00 each, and that the cash market value of the other blow out coils referred to was $6.00 each. This testimony being before the jury without objection, and it appearing that ten of the drums taken were of the aggregate value of $100.00, and five of the last mentioned blow coils taken were of the value of $6.00 each, or of the aggregate value of $30.00, this would clearly show appellant to be guilty of a felony irrespective of the first lot of coils above referred to, and would in any event make the

objection contained in the three bills referred to, amount to nothing. The testimony was proper.

The two next bills complain of the refusal to instruct a verdict of acquittal under count one of the indictment, which charged appellant with the theft of the property herein involved. Since the jury found appellant guilty under the second count, we think it not necessary to discuss these two bills.

Bill No. 6 was reserved to the refusal of the court to give appellant's requested instruction for a verdict of not guilty under count two. Neither the motion nor the instruction is set out in the bill, which refers us to page 56 of the transcript for same. We doubt the propriety of such a bill of exceptions, or of such reference, but have examined the document set out on page 56 of the transcript, in which it appears that a motion was made for an instructed verdict of acquittal under the second count of the indictment on the ground that there was no evidence that appellant ever claimed possession of the property of Albritton, with knowledge that it was Albritton's property, and that until this had been proved beyond a reasonable doubt, a verdict of guilty could not be sustained. Such a motion but begged the whole case, and undertook to take it away from the jury, and manifestly was properly refused. The averment in both counts of the indictment was of ownership in Albritton, who was shown to be president and general manager of the Traction Company; and lived in Wichita Falls, where the alleged stolen property was taken, and where it evidently was received by appellant. Appellant's contention seems based on the testimony of witness Bogue, an employee of the Traction Company, who testified on direct examination that Mr. Albritton was the general manager, and that all the other employees worked under him, but who testified on cross-examination that in a sense he had personal supervision of the cars from which the alleged stolen parts were taken, and that if anything went wrong with them it was his duty to see that such parts were fixed, and if any equipment needed repairing, it was part of his duty to specify the parts to be purchased and installed thereon. Mr. Bogue did not claim to have exclusive care or control of said cars, or that he was not an employee under Albritton, but the contrary. Appellant did not advance any proposition, in effect, that he had Bogue's consent to take the property.

What we said in Wicklund v. State, 119 Texas Crim. Rep., 96, has application. Neither Albritton nor Bogue were in or around the cars when the alleged stolen parts were removed. Albritton was the general owner, and Bogue might be said to

have had some special ownership, each being employees or officers of the Traction Company, to whom in fact the property belonged. Art. 402, C. C. P., authorizes, for purposes of pleading, averments of ownership in either or all of the owners when property is owned in common or jointly by two or more persons. See also Hartman v. State, 85 Texas Crim. Rep., 582; Snover v. State, 91 Texas Crim. Rep., 269.

Bill of exceptions 9 complains of the refusal of a special charge, which was properly refused. The court gave a clear and full charge in this case, covering the phase of the case at which said special charge was directed.

The facts herein show that from all 22 of the street cars mentioned the controller boxes had been removed. A witness, whose business was buying and selling junk in Wichita Falls, testified that on August 24, 1933, appellant and two others came to his place in the afternoon with a quantity of brass and copper, which said parties began unloading from the car they came in. Witness testified that he walked over and looked at what they were unloading and told them he did not want it. About this time officers Robinson and Dowdy came by, saw what was being done, looked in the car, and took all three of the parties to jail. Later the officers and street car representatives came back and got the property. Mr. Robinson, one of the officers referred to by the preceding witness, testified to seeing appellant at the junk shop with two other parties; that appellant was sitting in a car, and that they had three sacks of brass and copper parts in the car, together with a quantity of loose brass and copper. He said he asked appellant whose car that was, and appellant said it was his. The officer then asked him whose stuff that was in the sacks and in the car, and appellant said "It is ours." The officer said he could tell the brass and copper were parts of street cars, and he communicated with the Traction Company, and later went to said junk shop with Mr. Bradshaw, an employee of the company, and took the brass and copper thus found in possession of appellant and returned it to the Traction Company. We think the facts sufficient to support the verdict of the jury, and being unable to agree with appellant in any of the contentions made, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Mr. J. L. Bogue had been an employe of the Traction Company for many years, having charge of the replacement of worn parts necessary to operate the cars. In

giving his estimate of the replacement value of the property stolen he testified as follows: "* * * the basis used was I took the manufacturer's catalogue net price with the listed discount and ascertained that the second-hand value, that is, I estimated that the second-hand value of that material in the condition it was in when we quit using it would be fifty per cent of the net value. * * * From my experience in replacing parts that were worn out, and having had control and charge of that phase of work for the company I feel that I am qualified to testify as to the cost of replacement of the property on the date that it disappeared; * * * I used the catalogue of the General Electric in comparing and determining the values I gave a while ago as to replacement values. In other words, I based by replacement values that I gave a while ago on the list price in the catalogue less the discounts and then fifty per cent; that was for second-hand replacement. * * * Of course, I am using as a basis the list price in the catalogue, less the forty per cent discount. It would be by means of that catalogue alone that I arrive at my replacement value in this case. * * * I can not say that of my own knowledge that I know what the second-hand replacement value is; I can only give it to you as I have been doing. I had to consult the catalogues; a man can't carry those things in his head. You necessarily have to go by the manufacturer's price list—how else could you know. * * * I made my prices after careful study of the catalogue of the General Electric Company, and compiled what I thought was the correct price as it was explained to me; and it was explained to me as I have explained it here today, the cost price, less the discount and then fifty per cent of that I figured would be a fair market value or replacement value would be really what I had in mind; that was the only way that I know that I could have arrived at that figure; I did not have any other way of finding out except by consulting the catalogue of a reputable and leading concern who handled those same articles."

Appellant renews his insistence that the use of the price list in the catalogue by the witness was erroneous, in that it is claimed to have been hearsay. Witness testified that the catalogue used was that of the General Electric Company. The evidence regarding it was sufficient for the trial court to conclude that the catalogue referred to was the one furnished by the company to its customers, and the commercial public generally. There are no recitals in the bills of exception showing anything to the contrary. After again examining the point urged by appellant we fail to discern error. See Corpus Juris, Vol. 22,

Sec. 152, p. 188; Wharton's Cr. Ev., 10th Ed., Vol. 1, Sec. 258, Odom, et al. v. Garner, et al., 86 Texas, 374.

Appellant asks us to pass upon bills of exception numbers ten and eleven. Both have been examined. They relate to special charges which were refused. If there is evidence in the record calling for either of the charges we have failed to discover it, and the charges, as drawn, appear to be on the weight of the evidence.

The motion for rehearing is overruled.

*Overruled.*