# FEBRUARY 21, 1940

BEN ASNER V. THE STATE.

No. 20585. Delivered November 22, 1939.
Rehearing Denied February 21, 1940.

The opinion states the case.

*E. T. Miller* and *Simpson, Dorenfield & Fullingim*, all of Amarillo, for appellant.

*W. L. McConnell*, District Attorney, of Panhandle, *Underwood, Johnson, Dooley & Wilson*, of Amarillo, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is receiving and concealing stolen property. The punishment assessed is confinement in the state penitentiary for a term of two years.

The testimony adduced by the State upon the trial shows that during the month of January, 1938, Ross McGill was engaged in drilling an oil well for the Cities Service Company on the Deahl Tract, located about ten miles west of Borger, Texas. Since the drilling was only done during the daytime, one Barney Morrison was employed as a nightwatchman. On Saturday, January 15, Barney requested his brother, Bill, to relieve him for the night. On that afternoon, Bill Morrison had gone to see appellant and Frank Seliger, the proprietors of the Panhandle Pipe and Supply Company in Borger, and made arrangements to sell them some tools that were west of town. Appellant and Seliger agreed to purchase them, and Bill Morrison promised to deliver them that night. Bill got in touch with Earnest Roberts and agreed to split the proceeds from the sale of the property if Earnest would secure a car and assist in delivering it. These parties drove out to the well that night and loaded a part of the tools and delivered them to appellant and Seliger at their place of business. They then brought another load. After all the tools had been delivered, appellant and Seliger asked them how much they wanted for the property, and when told $50 they replied that they could not pay this much as they were also taking chances. They finally paid about $33 for the tools. Appellant and Seliger then had the boys, who were only 19 years of age, sign fictitious bills of sale. A check was then issued, payable to the fictitious person named in the bill of sale, which was endorsed and then taken by Seliger to the K. C. store about eleven p. m. and cashed. A few days after appellant and Seliger had received this property, they caused it to be painted green, thereby covering up any identification marks by which the tools might have been identified. Appellant insisted that this measure was taken in order to preserve the tools, and not to cover up any identifying marks. Appellant did not testify but offered a number of witnesses, some of whom had been in the employ of the Panhandle Pipe & Supply Company for quite a while. They testified that the tools alleged to have been stolen had been in possession of the company many months prior to the date of the alleged theft. Others testified that appellant and Seliger were not at the office on the night in question. That appellant was at the home of his aunt attending a birthday party. While the evidence is conflicting, we think there are enough circumstances shown by

the State to corroborate the testimony of Roberts and Morrison, and to justify the jury in their conclusion of appellant's guilt.

One of the most hotly contested issues in the case was that of the value of the property in question. The State's theory was that there was no cash market value in the vicinity for the kind and character of the property in question, and they consequently proved replacement value. It was the defendant's contention that the property in question was nothing but junk and as such its cash market value was $4 or $5 per ton. One of appellant's witnesses asserted that junk was worn out property, obsolete and not fit for use except in an emergency, while the property in question was useable and in good condition. Thus two theories as to value were presented. If it were junk, its value was $4 or $5 per ton. If it were not in such condition as would bring it within the classification of junk, then it had no cash market value and proof of replacement value was admissible. See Sec. 2488, Branch's Ann. P. C. The question as to whether the property was or was not junk was one to be decided by the jury from the evidence and the appearance of the tools before them. Having solved this question, the solution of value became easy. Apparently appellant did not consider it as junk, or he would not have paid a sum for it which would have been sufficient to have bought four or five tons of the same. Moreover it is not likely that he would preserve the same by painting it if it were in fact junk.

By bill of exception number two, appellant complains because the witness Johnson was permitted to testify to the actual or replacement value of the tools in question, after he had first testified that he had been engaged in drilling oil wells for the past thirty years. That he was familiar with the type of tools in question, their use and condition at the time they were stolen, and the cost price to oil well drillers. It occurs to us that since the witness had affirmatively stated that there was no cash market value for tools of that kind and character at or anywhere near the place from which they were taken, it was proper to state the replacement value. This is the well established rule in this State. See for example, Holmes v. State, 72 S. W. (2d), 1092, Vol. 36 Tex. Juris., p. 371, Sec. 41. The disposition of this bill controls bills numbers three, four and five and we see no need in discussing them. It likewise disposes of the objection to the testimony of the witness Conover, in bills 7, 8, and 9, which is to the same effect insofar as it relates to the value of the two five inch wrenches.

A complaint is urged in bill number six to the testimony of Johnson in identifying two wrenches, described in the indictment as five inch wrenches, when it was shown by actual measurement that they were but 3 1/2 and 3 3/4 inches respectively between the jaws thereof. The complaint made thereto is that this is a material variance from the allegations af the indictment. We are forced to disagree. Johnson testified that these wrenches were used on 5 inch holes and were commonly referred to as five inch wrenches. See Schenk v. State, 174 S. W., 357; Roman v. State, 142 S. W., 912; Dignowitty v. State, 17 Tex. 521.

Bill number ten complaining of the testimony given by Rob. Ayers was cured by the prompt action of the court in sustaining appellant's objection to the same and the accompanying instruction to the jury to disregard the same. This is particularly true since there was evidence before the jury that the stolen property was found in appellant's possession and identified.

Bill number eleven complains of a question propounded to Ayers. Appellant's objection to the question was sustained and the witness was not permitted to answer. We do not think the question, in and of itself, was of such prejudicial nature as would require a reversal. Moreover, it was not altogether improper for the State to show, if it could, that tools of the same type had perhaps been substituted. Bills numbers 12, 13, and 15 and sixteen appear to be without merit and we see no need in discussing them.

By bill of exception number fourteen, appellant complains of the action of the district attorney on cross-examination of appellant's witness, Grubbs, in asking him the following question: "Were you there with the officers at the time Stephens' stuff was identified as stolen?"

The court promptly sustained appellant's objection and instructed the jury not to consider the same, and the witness was not permitted to answer the question. Appellant nevertheless excepted on the ground that the same was so highly prejudicial that the evil effect thereof could not be withdrawn from the jury. While the question may not have been properly framed, in that it contained an implied assertion that some of the property had been stolen from Stephens and was found at appellant's place of business about the same time, we think if the State had been allowed to show that some property had been recently stolen from Stephens and had been found in the same yard at about the same time, it would have been

admissible on the theory of guilty knowledge. Guilty knowledge was an element of the offense which the State was required to prove, and evidence of other stolen property being in appellant's possession about the same time and place was a circumstance from which an inference of guilty knowledge might arise. See Kluting v. State, 90 Tex. Crim. Rep., 44, 232 S. W., 305, Padillo v. State, 86 S. W. (2d), 772 and authorities cited; Hodges v. State, decided by this court on Nov. 1 but not yet reported. (137 Texas Crim. Rep., 527.) Moreover appellant offered evidence himself which showed that other stolen property was found in his yard and in his possession. Hence the evidence complained of as indicating an extraneous offense was no more prejudicial than that which he offered by his own witness.

Appellant urged a great many objections to the court's charge, which contained an instruction upon every phase of the law applicable to the facts proved upon the trial. We see no need of entering upon a detailed discussion of each objection. One objection is based upon the ground that the court failed and refused to instruct the jury relative to the law of circumstantial evidence. We do not think such an instruction was necessary under the facts. A complete case was made against appellant by the testimony of Bill Morrison and Earnest Roberts, the accomplices. All the State needed was corroborating facts or circumstances. It is the settled rule in this State that unless the State's case rests entirely upon circumstantial evidence, there is no need for an instruction upon the law relative thereto. See Wilson v. State, 28 S. W. (2d), 804, and Hicks v. State, 83 S. W. (2d), 349 wherein the identical question here presented is decided adversely to appellant's contentions.

Appellant also contends that the trial court erred in refusing to limit the testimony of the accomplices to show the original theft. Such a limitation of the charge was not necessary under the facts of this case. The cases to which he cites us are cases in which confessions were made by the thief, and a limitation in the charge that such confession is only to be considered as establishing the theft is clearly proper. In the present case, however, the State offered the *testimony* of these witnesses, and appellant exercised his right to cross-examine them at great length. See Allison v. State, 263 S. W. 604 (606) ; Parrish v. State, 116 S. W. (2d) 706. Under these authorities, the ruling of the court in this particular was not error.

We think that the court's instruction with reference to the

value of the tools was sufficient as a guide for the jury in determining the question. There is also some complaint levelled at that portion of the court's charge wherein he instructs them that they could not, in any event, find the value of the tools at more than that alleged in the indictment. He apparently con- tends that this makes evidence of the averments in the in- dictment. We are not in accord with him, since the proof tended to show that the value of the tools was more than alleged in the indictment. Consequently the charge was more favorable to him than otherwise. If it is his contention that it is error for the trial judge to refer to the indictment in the charge, we refer him to the cases of Salinas v. State, 18 S. W. (2d), 663, and Lindsey v. State, 299 S. W., 399, where this Court has held otherwise. There was also some evidence that some of the tools in question might not have belonged to Johnson, the special owner, and under the charge as given, this might have authorized the jury to conclude that the value of all the prop- erty was less than $50.

Perhaps the most perplexing question in the case is the complaint urged by appellant that the trial court failed and refused, over proper objection of appellant, to charge on the law of exculpatory statements. His contention is predicated on the fact that when the appellant was *first* questioned by the officers relative to the stolen tools and a description given to him of these tools by the officers, he readily admitted that he had purchased some similar tools from other sources, in- cluding Clem Hines, and gave permission to the officers to search his premises for the goods described by them. Appel- lant insists that since these statements were proved by the State and *were exculpatory in nature,* the State was bound thereby until it disproved them beyond a reasonable doubt, and the trial court should have so charged upon proper request. If these statements made by appellant had been *exculpatory in nature,* and if appellant had made any damaging admis- sions in the same, there might be some merit to his conten- tion. But the mere fact that the accused had bought some such tools from other persons and had them in his possession would not entitle him to a charge on exculpatory statements. By the statements relied on, appellant admitted nothing which might even remotely connect him with the offense with which he was later accused. The truth of the matter is that the state- ments were not *admissions of anything* upon which the State relied and which were relevant to his guilt; consequently they could in no manner be construed as *exculpatory statements*. To better illustrate our position, we quote the two statements

made by appellant at the time he was first questioned and on which he seems to most strongly rely: The State's witness, Ayres, a constable, testified: "I told him (the appellant) what kind of tools generally had been stolen. He very promptly told me that he had bought some tools like that. * * * To go ahead and search and see if I could find them here * *. **He said go ahead and look. He further told me that they had bought some tools of that general description. * * * He said he had bought them from Clem Hines."

Johnson, a State's witness, testified: "This boy here is the one who made that statement. It was the first time that we were there that this boy (appellant) Asner told Ayres that he bought those two wrenches from Clem Hines."

Let us take a simpler case wherein the principal sought to be advanced can be more readily appraised. Suppose officers, in their search for a stolen watch, go to a pawn shop. They describe the watch to the proprietor, who then states: "I have many such watches pawned to me every day. I received watches such as you describe from X, Y, and Z during the past few months. Consider yourself at liberty, gentlemen, to search among my wares for the watch which you say has been stolen." If this same proprietor were later charged with receiving and concealing this stolen watch, would it be seriously contended that his statements made at the time the officers started to search were exculpatory and demanded such a charge as is requested here? We think not. He has admitted no damaging fact upon which the State need rely, and has in no way connected himself with the crime. Insofar as the probative value of the information given, it certainly could not be said that the statements could achieve the dignity of either a confession or an admission. He has, in fact, merely given his permission to search, which under these facts, could not be considered an *exculpatory* statement. Having admitted nothing, he is entitled to no such charge.

Viewing the statements relied on by appellant, it will be noticed that it would be impossible for the trial court to have successfully prepared a charge, basing the same upon these statements as being "exculpatory." Moreover, the court did charge that if the jury believed appellant bought any of the property alleged in the indictment from the Gulf Company, Peltz, or anyone other than Morrison and Roberts, then not to convict them of receiving and concealing any such tool or tools. This, we believe, was all he was entitled to under the facts. In his able brief, appellant has cited us to a great many

authorities, but they are all cases in which some exculpatory statement *was made,* and so we do not believe they have any application to the facts of this case.

From the statements above quoted, it will also be seen that appellant gave no explanation of his possession of recently stolen property when said possession was *first* challenged. Such explanation as he later gave, to the effect that the property had been purchased from the Gulf, Peltz, and others, was sufficiently charged on by the Court. In short, when *first* questioned we do not think appellant gave any explanation which would require a charge either on exculpatory statements or defendant's explanation of his possession of property recently stolen.

All of the other complaints urged by the appellant have been carefully examined by us and are deemed to be without merit.

No error of a reversible nature appearing, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant has filed a comprehensive motion, reiterating some of the points raised originally, and also challenging our ruling in the original opinion relative to what might be termed an exculpatory statement concerning the two five inch wrenches only, which were a part of the property claimed by the State to have been received and concealed.

Unquestionably the admission of the possession of such wrenches was damaging, in a way, to appellant, and would and did show his possession thereof, leaving the fact to be further proven of their theft and appellant's knowledge thereof. His statement of their purchase from Clem Hines was also in a way exculpatory in so far as these two wrenches are concerned; but such a statement would only become exculpatory of a small portion of the property alleged to have been received and concealed, and therefore could not have resulted in imposing upon the trial judge the duty of authorizing in his charge an acquittal in this case, unless the State disproved the fact that such two wrenches were bought from Clem Hines. It seems that there was found and identified in appellant's possession other property,—as alleged in the indictment, which

totaled over the value of fifty dollars,—that was not contained in the exculpatory statement. This property was identified as having been stolen from the complaining witness, and which property, exclusive of the two wrenches, amounted in value to more than fifty dollars.

At the most appellant was only entitled to have the jury charged that unless the State had disproved the statement relative to the purchase of these two wrenches from Hines, then they should not consider the same for any purpose in arriving at appellant's guilt in this matter. As observed in our original opinion, the court did charge the jury that if the jury believed, or had a reasonable doubt thereof, that appellant purchased any of the alleged stolen property from the Gulf Company, Sam Peltz, or anyone else save the two confessed takers thereof, then they should not take into consideration such thus purchased property in arriving at their conclusion in this matter. Under such a charge we think that the court sufficiently instructed the jury, in effect, that they must believe beyond a reasonable doubt that the appellant did not purchase such wrenches from anybody save the two confessed thieves before they could take the circumstance of the possession of such wrenches into consideration while determining the issues in this case. We do not think appellant was entitled to any further instruction on his partially exculpatory statement in this matter. The court could not tell the jury that because he had purchased two items of the many charged, that he was entitled to an acquittal, especially with the numerous other articles still unexplained; hence it naturally followed that he could only direct them to discard any items that they did not believe beyond a reasonable doubt were purchased from the two confessed original takers. If appellant had been charged with receiving fifty stolen wrenches, and had proved that he purchased five of these wrenches legitimately from a dealer, nevertheless such would not have entitled him to an acquittal, but would only have entitled him to have the jury not consider the possession of such five wrenches as a guilty circumstance in arriving at their verdict.

We are not impressed with the proposition that the testimony of the two confessed takers of the property should have been limited to the fact of the unlawful taking alone, but we do think that when present in person and giving their testimony, their testimony as to the sale or delivery of such stolen property was admissible for what it might be worth on the question of receiving and concealing such stolen property, of course, under proper instructions relative to their accomplice-

-ship. We think appellant has failed to recognize the fact that these two original takers were also witnesses not only to the original taking, but also to the receiving of such property, and the knowledge of its stolen character upon the part of appellant. This latter testimony was material, and surely this court has never held that such additional testimony could not be given by the original thief, provided he knew the same. The case of Forrester v. State, 152 S. W. Rep. 1041, only holds that the fact of the unlawful taking of the original thief would not be proof that the accused received the property, knowing the same to have been stolen, and such should have been thus limited in the charge, but surely if the original taker had a further knowledge of the accused receiving and concealing such property, then his testimony thereof should be received under proper instructions.

The motion will be overruled.